Strafford
No. 90-512

GEORGE M. DUBOIS & a.

v.

JUDITH (DUBOIS) SMITH

November 8, 1991

*Beaumont, Mason & Campbell P.A.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the plaintiffs.

*Sakellarios & Associates*, of Manchester (*Kathleen Mulcahey-Hampson* on the brief and orally), for the defendant.

THAYER, J. The defendant, Judith (Dubois) Smith, appeals the Superior Court's (*Dickson*, J.) decision to award the proceeds of certain life insurance policies, of which she was the named beneficiary, to the plaintiffs, the five sons (the Dubois brothers) of the decedent-insured, based on the language of the decedent's first divorce decree. The issue presented is whether in this State the rights of a named beneficiary to the proceeds of a life insurance policy may be superseded by the provisions of a divorce decree. We affirm in part and reverse in part.

Smith argues that neither of the decedent's two divorce decrees impairs her claim to the proceeds. For the reasons set forth below, we hold that the decedent, Antoine Dubois, owned two severable insurance policies. In addition, we hold that while the language of the first divorce decree entitles the Dubois brothers to the proceeds of one policy, neither decree divests Smith of her entitlement to the proceeds of the other policy.

In 1967, Antoine Dubois' employer gave him a certificate of life insurance as a perquisite to employment. He named his then-wife, Marie Dubois, and their five sons (they had no daughters) as primary and contingent beneficiaries, respectively. In April 1976, Antoine made his son Donald primary beneficiary, leaving the other sons contingent beneficiaries and deleting Marie's name entirely from the list. Three months later, Antoine again changed beneficiaries, restoring the original designations. Antoine and Marie were divorced in mid-1977, and the divorce decree incorporated their agreement that "Antoine Dubois shall make his children the beneficiaries of his insurance policies, share and share alike." The record, however, indicates that Antoine never did so.

Following the divorce, Antoine Dubois made no change in the list of designated beneficiaries until March 5, 1980, when he substituted the name of his new bride, Judith Anne (Covey) Dubois, for that of his ex-wife, Marie. A month later, on April 1, 1980, he limited the contingent beneficiaries to one son, George. Smith testified that he

explained to her "that he wanted to leave his life insurance where it would be used responsibly because he knew I had a need for it, that he wanted me to have it, that he did not feel his children were responsible. . . . [H]e wanted them to be self-supporting." Antoine Dubois lived nine more years, but made no further changes to his list of beneficiaries. When his employer issued him another certificate of life insurance, dated April 14, 1980, he designated beneficiaries by simply referencing the April 1, 1980 beneficiary designations.

Judith and Antoine Dubois separated in mid-1980 and were divorced the following year. (She later became Judith Smith.) They agreed that Judith should have a modest alimony award in one lump sum and several personal items given to the couple as wedding gifts. As for Antoine, the parties stipulated that:

> "All other property not disposed of above is awarded to [Antoine] free and clear of any claim of [Judith]. This specifically includes the real property located at 13 Asbury St, Salem, N.H. . . . Neither party makes any claim for alimony against the other beyond what is set forth [above]."

No other provisions of the agreement are relevant to this case.

In 1985, Antoine wrote a letter to his attorneys (the same attorneys who represent his sons in this appeal) entitled "Last Will and Testament." It states that

> "I'll express my wishes using my own words, but mindful that those wishes will probably require rephrasing to carry the spirit of my wishes into a proper and final legal document. So, the final phrasing is not important. The spirit it conveys legally is. If any of my wishes are not legally proper, disregard them and go on with the document. . . . The text in the remaining pages covers the essence of my wishes."

Antoine Dubois then wrote: "To the best of my knowledge, there are no outstanding financial, legal or moral obligations relative to [my] ex-wives. I pray for them daily, I wish them well, but I feel no obligation to make any provisions for them in this document."

In the portion of the letter captioned "ASSETS AND LIABILITIES," Antoine described his "two insurance policies," and declared: "That insurance money, whatever it is, would constitute the greatest part of my estate." Several specific instructions concerning his personal property appear in the "SPECIFIC LEGACIES" section, followed by references to his car and apartment furnishings under "GENERAL LEGACIES." His insurance policies, however,

receive no more mention. No evidence was presented below to indicate whether Antoine Dubois' attorneys told him that life insurance proceeds are not considered part of a decedent's estate, or whether they decided to simply "disregard [this erroneous assumption] and go on with the document."

Judith Smith testified that she met Antoine Dubois briefly in 1987, at which time he learned of her dire "economic straits." Antoine died unmarried two years later, leaving Judith Smith as the named primary beneficiary. Smith testified she was not aware that Antoine Dubois had not removed her name from his list of beneficiaries, and was surprised to learn of her status at his death.

The plaintiffs, the Dubois brothers, brought this declaratory judgment action in January 1990 against Smith and Antoine Dubois' former employer. In May 1990, the superior court granted Prudential Insurance Company's (Prudential) request to be substituted as co-defendant in place of the former employer. Prudential is the insurance company responsible for payment of the proceeds at issue here. Four months later, the court dismissed Prudential from this suit. The court declared that "[t]he defendant (Prudential) shall pay the proceeds of the *two* policies into court on September 24, 1990 with interest to that date and an accounting as to *each* policy." (Emphasis added.) Prudential complied, writing one check in the amount of $46,315.15 and another in the amount of $51,461.28. Each check referenced a different policy. Smith objected to Prudential's dismissal, arguing that the insurance company's records were needed to resolve the issue of severability.

On October 5, 1990, the superior court ruled that the plaintiffs are entitled to all of the proceeds of Antoine Dubois' insurance policies. The court made no reference to the divorce stipulation of Antoine Dubois and Judith Smith, and declined to rule on Smith's several requests for findings of fact and rulings of law. It also failed to address Smith's argument that there are two, severable insurance policies, and that Antoine's first divorce decree applies to only one of them. Instead, the court simply stated:

"To allow Antoine Dubois to change beneficiaries would violate the intent of the parties at the time of the [first] divorce and stipulation. The obvious intent of the stipulation was that the children be the recipients of the decedent's insurance death benefits. A Court of equity will regard the decedent as having done that which he was obligated to do and, therefore, treat the policies as equitably assigned to those

who should have been named as beneficiaries—the five sons
of Antoine Dubois."

Smith appeals this ruling.

Before we address the main questions of entitlement to the insurance proceeds, we must discuss the issue of severability: that is, whether there are two insurance policies at issue here, or one. The Dubois brothers argue that no evidence was presented to confirm the existence of two divisible insurance policies or to indicate that, assuming severability, Antoine Dubois could have named a different beneficiary for each policy. Smith responds that the insurance policies themselves, as admitted into evidence, confirm that the policies are severable. We agree.

First we note that Antoine Dubois' insurance policies are described in two entirely separate pieces of paper (hereinafter referred to as "certificates"), held together only by a staple. Each purports, on its face, to be a "Group Insurance Certificate," and each has a place on the face of the document to list the employee's name, the certificate number, the date, and the beneficiary. Although the certificate number is the same on each certificate, closer inspection reveals that this number is simply the employee's social security number. Both certificates do, however, contain the same pre-printed group insurance policy number. One certificate is dated January 1, 1967, and describes a policy for basic life insurance. The other, dated April 14, 1980, describes both basic and supplementary life insurance, and contains provisions not found in the earlier certificate.

On the last page of each certificate is a "Record of Beneficiary Changes." The earlier certificate's record contains several entries, the last being a reference to a form dated April 1, 1980. This form, attached to the certificate, records Antoine Dubois' last change of beneficiaries, from his five sons as shared contingent beneficiaries to his son George as sole contingent beneficiary (Smith's name is retained as primary beneficiary). The later certificate's change of beneficiary record is blank. Instead, the face of the certificate simply references the April 1, 1980 form on the line marked "Beneficiary."

Our examination of the certificates persuades us that there are indeed two severable insurance policies, and that Antoine Dubois' second policy was not effective until April 14, 1980. The superior court's order regarding Prudential's dismissal, as well as Prudential's response to that order, reinforce this determination. The court used the words "each policy" and "two policies" to describe the insurance, and Prudential wrote two checks, each referencing a differ-

ent policy, to pay the proceeds into court. We also conclude that Antoine was not required to designate the same beneficiary in each policy. Each certificate has a place to name a beneficiary and to record changes in beneficiary designations, and neither certificate's preprinted matter references the other. Although Antoine Dubois apparently chose to designate the same people as beneficiaries to both policies, he was not obligated to do so.

Having determined that Antoine Dubois held two separate life insurance policies, we must decide who is entitled to the proceeds of each one. We begin with the earlier policy. Smith argues that Antoine was free to make her the beneficiary of this policy at any time because the divorce stipulation of Marie and Antoine Dubois did not require Antoine to *irrevocably* name his sons as primary beneficiaries or to maintain the policies. We cannot agree.

An insured has the right to change the designation of a policy's beneficiary, if the policy reserves this right to the insured. M. RHODES, 5 COUCH CYCLOPEDIA OF INSURANCE LAW 2D § 28:36, at 48 (Rev. ed. 1984) (hereinafter "COUCH"). Such a right is not usually affected by the divorce or marriage of the insured, no matter how the personal or legal relationship of the insured to the beneficiary changes. 5 COUCH § 28:41, at 56, § 29:4, at 234. It is, however, possible for the insured to contract this right away in a divorce stipulation. 5 COUCH § 28:41, at 56, § 29:4, at 238–39. When this is done, "the rights of the first-named beneficiary, by becoming vested, may be superior to those of any subsequently designated person." J.A. APPLEMAN and J. APPLEMAN, 2 INSURANCE LAW AND PRACTICE § 922, at 515–16 (1966) (hereinafter "APPLEMAN").

Thus, "courts have held that the . . . children from a defunct marriage have an interest in life insurance proceeds superior to that of the named beneficiary where a divorce decree or agreement required the insured to maintain insurance for them and the insured . . . did not name them beneficiaries . . . ." 2 APPLEMAN § 922, at 102 (Supp. 1991). This view appears to be widely held. In a case factually similar to the one before us, the Supreme Court of Utah explained:

> "A court of equity can and should regard as done that which ought to be done; and similarly, it can and should regard as not having been done that which ought not to have been done. Therefore, in judging the rights of these contending parties, the court should have disregarded the forbidden attempted change of beneficiary . . . ."

*Travelers Insurance Company v. Lewis*, 531 P.2d 484, 485 (Utah 1975); *see also Wiltz v. John Hancock Life Ins. Co.*, 58 Mich. App.

604, 607–08, 228 N.W.2d 484, 486 (1975); 5 COUCH § 28:41, at 57 (see cases cited therein).

■ Neither party here contends that Antoine Dubois' insurance policies prevented him from changing the designated beneficiaries. The disagreement centers, rather, around the trial court's interpretation of Marie and Antoine Dubois' divorce stipulation, which states that "Antoine Dubois shall make his children the beneficiaries of his insurance policies, share and share alike." This provision plainly required Antoine Dubois to designate his children beneficiaries of his then-existing insurance policies. Because Antoine's earlier policy was in effect when this provision was written, we hold that Antoine contracted away his right to name anyone else beneficiary of this policy. The divorce stipulation contains no language limiting the time his children were to be named beneficiaries, and therefore the agreement, incorporated into the court's divorce decree, remained binding on Antoine until further order of the court. Smith presented no evidence that Antoine Dubois ever petitioned the court for a modification of this order, and thus his sons acquired a vested right to the proceeds superior to anyone else named beneficiary. *See Wiltz supra; Lewis supra.*

Smith contends that *Wiltz* and *Lewis*, cited above, do not support our conclusion that the Dubois brothers are entitled to the proceeds of the earlier insurance policy, because the divorce stipulations or decrees at issue in those cases contain specific language requiring the insured to *irrevocably* name certain persons beneficiary, whereas no such limiting language appears in the stipulation of Antoine and Marie Dubois. *Compare Wiltz*, 58 Mich. App. at 606, 228 N.W.2d at 485 (divorce decree forbade insured from changing beneficiary), and Lewis, 531 P.2d at 486 (divorce decree stated that "the defendant should be *permanently restrained* from changing the beneficiaries") (Henirod, J., dissenting), *with Cadore v. Cadore*, 67 So. 2d 635, 637 (Fla. 1953) (divorce decree contained no specific language requiring designation to be irrevocable; court held the insured had right to change beneficiary).

We do not read *Wiltz* and *Lewis* as narrowly as Smith apparently does, and we decline to follow the holding of *Cadore*. Smith admits that her argument's logical conclusion would mean that, where a divorce decree states simply that "the insured shall make X the designated beneficiary," an insured could get divorced on Monday, make the required change on Tuesday, and switch beneficiaries contrary to the decree on Wednesday. If the insured died on Thursday, the

named beneficiary would receive the proceeds. Such a result would obviously run counter to the intention of the parties and against the meaning of the court order. We therefore reject it.

■ Smith also contends that, even if the Dubois brothers are entitled to the proceeds of the earlier insurance policy, they should receive only as much as the policy was worth at the time of Antoine Dubois' first divorce decree. We dismiss this argument. A beneficiary of a life insurance policy is entitled to the full value of the policy at the time of the decedent's death. *See, e.g., Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986); *Duffy v. Duffy*, 13 Mass. App. 992, 993, 433 N.E.2d 91, 91 (1982).

■ We now address the question whether Smith, or the Dubois brothers, are entitled to receive the proceeds of the later insurance policy. The Dubois brothers first assert that Antoine Dubois' 1977 divorce decree prevents Smith from having any interest in the proceeds, just as it does with respect to the proceeds of the earlier policy. We disagree. The later policy did not come into effect until three years after the 1977 decree, and the words of the decree in no way suggest that future policies were contemplated by the parties.

The Dubois brothers also argue that, even if the 1977 decree did not prevent Smith from gaining any interest in the proceeds of the later policy, the 1981 decree did. They contend that the decree awarded all property not otherwise disposed of to Antoine Dubois, free and clear of any claim by Smith. This property, they maintain, included Smith's interest in the later insurance policy. Again, we disagree.

■■ Legal theory and precedent favor Smith over the Dubois brothers. We repeat our statement made above that if an insurance policy so provides, the insured may change the designated beneficiary of the policy at any time, provided that the insured has not contracted away this right. *See* 5 COUCH § 28:41, at 56, § 29:4, at 234, 238–39. Where such a right exists, the beneficiary's interest in the policy does not rise to the level of a vested property interest unless the insured is somehow prohibited from changing the beneficiary designated in the policy. *See* R. KEETON & A. WIDISS, INSURANCE LAW § 4.11(c)(1), at 428 (West 1988).

The Dubois brothers claim that the law is different in this State, and cite *Stebbins v. Stebbins*, 121 N.H. 1060, 438 A.2d 295 (1981), to support their proposition that a beneficiary interest is akin to a vested property right. *Stebbins*, however, is inapposite. In that case,

the plaintiff was held to have a vested property right in life insurance proceeds because the defendant had been ordered to maintain life insurance and name the plaintiff as beneficiary. *Id.* at 1063, 438 A.2d at 298. *Stebbins* in no way implies that a beneficiary's interest is a vested property right in the absence of such an order, and there is no contention here that Antoine Dubois was ever ordered to name Smith beneficiary of his policy.

■■ From the general rule stated above, and in the absence of any New Hampshire law to the contrary, it follows that a divorce decree or stipulation which merely releases all claims of one party to the property of the other does not, in the insurance policy context, destroy the beneficiary status of the first party, because the beneficiary interest is not a vested property right. Antoine Dubois had never promised or been ordered to promise that he would forever designate Smith beneficiary of the insurance policy, and thus never bestowed on her a vested property interest in the policy. Therefore, Smith did not forfeit her right to the beneficial interest when she released all claims to Antoine Dubois' property.

The Supreme Court of Tennessee explained this principle as follows:

> "'Being a beneficiary of the life insurance of her ex-husband was not a "property right", a result of an "obligation to support a wife", a "right", or a "claim" which was waived and relinquished by the property settlement agreement. The husband was under no duty by law or contract to have life insurance in the first place or to designate the defendant as the beneficiary of it; he could have changed the beneficiary at any time without encountering any of the defendant's rights; she simply had no claim with respect to the life insurance. Therefore the terms of the property settlement agreement do not affect the life insurance policy at all.'"

*Bowers v. Bowers*, 637 S.W.2d 456, 457–58 (Tenn. 1982) (quoting dissenting opinion of overturned lower court decision); *see also Rountree v. Frazee*, 209 So. 2d 424, 425–26 (Ala. 1968); *Mullenax v. Nat'l Reserve*, 29 Colo. App. 418, 422–24, 485 P.2d 137, 139–40 (1971); *Kruse v. Todd*, 260 Ga. 63, 67, 389 S.E.2d 488, 489–90 (1990); *Bersch v. VanKleeck*, 112 Wis. 2d 594, 598–99, 334 N.W.2d 114, 116–17 (1983); *Simmons v. Simmons*, 272 S.W.2d 913, 916 (Tex. Ct. App. 1954).

As noted by the Supreme Court of Wisconsin, this rule

"will encourage the prompt settlement of insurance claims and avoid unnecessary litigation. Without this rule, there would be quite an incentive for an interested party to litigate if there was an ambiguity in the divorce decree, especially if significant sums of money were at stake. It also avoids speculating about what the parties may have intended. It requires little effort to change a beneficiary on a policy after a divorce or include an explicit waiver or relinquishment of the beneficiary interest in the divorce decree."

*Bersch, supra* at 598–99, 334 N.W.2d at 117 (citation omitted).

■■ The Dubois brothers last contend that, even if the 1981 divorce decree cannot be read to divest Smith of her beneficiary interest in the later insurance policy, the decree should be reformed to comport with the true intention of the parties. This court has stated that

"reformation will only be granted when the evidence is *clear* and *convincing* that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing. J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 9–31, at 313 (2d ed. 1977); *see* 3 A. CORBIN, CONTRACTS §§ 614–16 (1960); 13 S. WILLISTON, LAW OF CONTRACTS §§ 1547–49 (3d ed. W. Jaeger 1970)."

*Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 237, 401 A.2d 201, 204 (1979) (emphasis in the original). The intent of the parties is generally examined as of the time of contracting. *Id.; see also Hellas Family Restaurants, Inc. v. G & P Family Restaurants, Inc.*, 120 N.H. 818, 819–20, 423 A.2d 613, 614 (1980).

■ The Dubois brothers cannot clear the first hurdle in the *Erin Foods* test. To do so, they must present clear and convincing evidence that Smith and Antoine Dubois agreed to forever forfeit Smith's beneficiary interest. All they have shown us is a letter dated four years after the divorce decree and four years before his death, in which Antoine Dubois stated that he felt no need to provide for Smith in his will in the absence of any outstanding legal, moral, or financial obligations to her, and that his insurance money constituted "the greatest part of my estate." These statements simply do not support a conclusion that Smith's beneficiary interest was forfeited by mutual agreement. In fact, Antoine Dubois' statement concerning

his obligations is consistent with our reading of the 1981 divorce decree because, as discussed above, we conclude that Antoine was free to name or not to name Smith beneficiary, as he saw fit.

Moreover, we do not know if Antoine's lawyers informed him that life insurance proceeds are not part of a decedent's estate for purposes of descent and distribution. Because the burden of proof rests on the Dubois brothers, we cannot assume the lawyers kept him ignorant of this fact, or that Antoine did not subsequently learn of it on his own. Finally, there was evidence at trial of Antoine's concern for Smith's economic welfare both before and after the date of the letter, and it is uncontested that Antoine was familiar with the procedure for changing the designated beneficiary of his policies. The Dubois brothers have not presented the required *"clear* and *convincing"* proof, *Erin Foods supra,* and we therefore reject their plea for reformation of the decree.

Smith presents two additional issues for our consideration: first, that Antoine Dubois' letter to his attorneys should not have been admitted at trial; and second, that the trial court erred in dismissing Prudential as a party-defendant to the lawsuit. Because we have resolved the issues involving the letter in Smith's favor, we decline to address the question of admissibility. Similarly, we note that Smith objected to Prudential's dismissal because she argued that the insurance company's records could help her prove that Antoine Dubois' insurance policies are severable. We have concluded without the aid of Prudential's records that the policies are indeed severable, and thus do not need to answer this final question.

*Affirmed in part; reversed in part; remanded.*

All concurred.