Cheshire
No. 95-515

### ESTATE OF MARCIA S. FREDERICK A/K/A MARCIE S. FREDERICK

v.

### JAMES W. FREDERICK, JR.

December 31, 1996

*Wrigley, Weeks & Martin, P.C.*, of Keene (*John D. Wrigley* and *Genienne A. Mongno* on the brief, and *Mr. Wrigley* orally), for the plaintiff.

*Norton, Parent & Cleary, P.C.*, of Keene (*William W. Cleary* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, James W. Frederick, Jr., appeals the Superior Court's (*Brennan*, J.) denial of his motion to dismiss the plaintiff's petition for declaratory relief, and its decision to grant the plaintiff's motion for summary judgment. The trial court held that the defendant's rights to the proceeds of two annuity contracts were extinguished by the plain language of a divorce decree. We reverse.

In 1979, the defendant was named the beneficiary of two annuity pension accounts which the decedent, Marcia S. Frederick, had purchased in 1970 through the Teachers Insurance and Annuity Association College Retirement Equities Fund (TIAA-CREF) while employed at a Pennsylvania college. The defendant and the decedent were married in 1982 and divorced in 1989. Four years later Marcia Frederick died. Although the annuity contracts provided that the beneficiary designation could be changed at any time upon receipt of written notice by TIAA-CREF, Marcia Frederick never sought such a change.

Because the decedent's estate believed that the parties' divorce stipulation effectively revoked the defendant's beneficiary status in 1989, it demanded that TIAA-CREF pay the annuity proceeds to the estate. TIAA-CREF refused to do so, and in 1994, the estate filed a petition for declaratory judgment against both TIAA-CREF and the defendant seeking payment. The defendant moved to dismiss the petition on the basis that the estate had no legal right to the proceeds. The estate countered with a motion for summary judgment.

The trial court denied the defendant's motion and granted the estate's summary judgment motion. It ruled that the "release of obligations" provision in the divorce stipulation, in which the parties "release[d] each other from any and all . . . obligations incurred during the marriage," effectively extinguished the defendant's beneficiary status. The trial court found that the cited language demonstrated the decedent's "clear" intent to remove the defendant as a beneficiary. This appeal followed.

The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court *de novo. See Lewis v. Shawmut Bank,* 139 N.H. 50, 53, 650 A.2d 744, 746 (1994) (contract); *see also Byrne v.*

*Ackerlund,* 739 P.2d 1138, 1143 (Wash. 1987) (divorce decree). The same standard of review applies to the trial court's interpretations of New Hampshire beneficiary law. *Cf. Petition of Walker,* 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

■ Neither party to this appeal contests the generally accepted rule that, absent a controlling statute, divorce by itself does not revoke a party's status as a contractually designated beneficiary. *See Dubois v. Smith,* 135 N.H. 50, 56, 599 A.2d 493, 497 (1991). Rather, the estate argues that the clear language of the divorce stipulation extinguished the defendant's beneficiary status. The dispositive question in this case, therefore, is whether the trial court was correct in ruling that the "release of obligations" language in the divorce stipulation was legally sufficient to eliminate the defendant as a beneficiary under the annuity contracts. We hold that it was not.

■ In *Dubois,* we indicated that a divorce decree must unambiguously evidence an intent to remove a beneficiary in order to effectively alter an original designation under a life insurance contract. *See id.* at 59-60, 599 A.2d at 499. In doing so, this court adhered to the traditional rule that the policy holder has the burden of effecting a change of beneficiaries. *See Acacia Mut. Life Ins. Co. v. Feinberg,* 61 N.E.2d 122, 124 (Mass. 1945). Placing the obligation to change the beneficiary designation on the policy holder ensures a smooth transfer of funds in the difficult period following the policy holder's death, and reduces the incentives for costly and divisive litigation. *See Bersch v. VanKleeck,* 334 N.W.2d 114, 117 (Wis. 1983). Consequently, a divorce decree may only change a beneficiary designation when it expressly states that the parties intend such a result. *See Manhattan Life Ins. Co. of New York v. Evanek,* 762 F.2d 319, 321 (3d Cir. 1985) (applying Pennsylvania law).

The divorce decree at issue provides that the parties intended to "release each other from any and all . . . obligations incurred during the marriage." The estate contends that this language, when viewed in light of the context of the entire agreement, revealed the decedent's intent to change her 1979 beneficiary designation. While we agree that a review of the context of an agreement will often be helpful, such an exercise is futile if the proffered meaning is one that the language of agreement cannot reasonably support. *Compare MacLeod v. Chalet Susse Int'l, Inc.,* 119 N.H. 238, 243, 401 A.2d 205, 208 (1979) (court should determine intent by considering surrounding circumstances) *with Logic Assoc's, Inc. v. Time Share Corp.,* 124 N.H. 565, 572, 474 A.2d 1006, 1010 (1984) (court will not consider evidence of alleged intent that conflicts with writing); *cf.*

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & R. Co.*, 442 P.2d 641, 644 (Cal. 1968) (Traynor, C.J.) (court may consider extrinsic evidence offered "to prove a meaning to which the *language of the instrument* is reasonably susceptible" (emphasis added)). In this case, we fail to see how the word "obligations" can be read to include the designation of a beneficiary, as there was no requirement, legal or otherwise, that the decedent name or continue the defendant as her beneficiary. *See Bersch*, 334 N.W.2d at 116 (beneficiary rights arise from contract, and not from marital status).

The estate attempts to avoid the mandate of *Dubois* by distinguishing life insurance policies, which were the focus of *Dubois*, from annuities. The trial court agreed and based its decision, in part, upon such a distinction. The court stated that "[i]f the policy at issue here had been a life insurance policy, [the defendant] would have been the named beneficiary, however, [the decedent] was the named beneficiary, followed by [the defendant]." We do not find this reasoning persuasive.

There are undoubtedly many real differences between a life insurance policy and an annuity contract. *See Garos v. State*, 99 N.H. 319, 320-22, 109 A.2d 844, 846-47 (1954). Nonetheless, the distinction that the estate advances runs counter to a long history of cases which have determined the status of annuity beneficiaries under the same analysis used in the life insurance context. *E.g., John Hancock Mutual Life Insurance Co. v. Soluri*, 134 F. Supp. 86, 87 (S.D.N.Y. 1955); *Taylor v. Sanderson*, 116 N.E.2d 269, 271 (Mass. 1953). Moreover, the trial court apparently did not appreciate that, while an annuitant and the named beneficiary of an annuity are both commonly termed "beneficiaries," the rights of each are fundamentally different. An annuitant, such as the decedent in this case, enjoys a status similar to that of a creditor. *See Chatham Co. Hosp. Auth. v. John Hancock Mut. Life Ins. Co.*, 325 F. Supp. 614, 619-20 (S.D. Ga. 1971); *see also Garos*, 99 N.H. at 322, 109 A.2d at 847 (comparing an annuitant to a person who has deposited money in a bank). On the other hand, the beneficiary of an annuity, or a life insurance policy, retains nothing more than an expectancy interest until the annuitant or policy holder passes away. *In re Bayer's Estate*, 26 A.2d 202, 205 (Pa. 1942) (annuity); *Standard Ins. Co. v. Schwalbe*, 755 P.2d 802, 804 (Wash. 1988) (life insurance). While *Dubois* was decided in a different context, its rationale is thoroughly applicable to the current dispute, as the defendant holds the same type of interest that was at issue in the prior case.

Finally, we note that neither party has argued that the federal Employee Retirement Income Security Act of 1974 (ERISA) applies

to this case. *See* 29 U.S.C. §§ 1001-1461 (1994). We must nonetheless consider the issue; for if the TIAA-CREF pension annuity program is governed by ERISA, it is arguable that federal law governs the designation of beneficiaries. *See Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir. 1996) (designation of beneficiaries in pension plans controlled by federal law). We need not examine this issue in great detail, however, because federal law leads to the same result in this case. Some federal circuit courts of appeals have determined that a divorce decree has no effect on the designation of a beneficiary. *See Estate of Altobelli v. Intern. Bus. Machines Corp.*, 77 F.3d 78, 81 (4th Cir. 1996) (collecting cases). Other courts have held that a decree may control in the face of a contrary prior designation. *See Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F.2d 275, 281 (7th Cir.) (en banc), *cert. denied*, 498 U.S. 820 (1990). Under the first line of cases the defendant would prevail as the named beneficiary. Under the second line of cases the defendant would still prevail, as we have determined that the divorce decree in this case did not change the decedent's prior designation.

In sum, we hold as a matter of law that the divorce decree in this case did not alter the decedent's prior beneficiary designation because it failed to explicitly indicate that a change was intended. The defendant's motion to dismiss should have been granted, and the estate's motion for summary judgment should have, accordingly, been denied.

*Reversed.*

All concurred.