Hillsborough County Probate Court
No. 99-120

IN RE PETITION TO ENLARGE ESTATE OF ROY L. MCINTOSH

June 6, 2001

*Sullivan & Gregg, P.A.*, of Nashua (*Kenneth M. Brown* on the brief and orally), for the petitioner.

*Smith-Weiss, Shepard & Durmer, P.C.*, of Nashua (*Kris E. Durmer* and *Beth Ann Lanza* on the brief, and *Mr. Durmer* orally), for the respondent.

BRODERICK, J. The petitioner, Scott L. McIntosh, appeals an order of the Hillsborough County Probate Court (*Cloutier*, J.) awarding the respondent, David McIntosh, the proceeds of their father's individual retirement account (IRA). We affirm.

The record supports the following facts. In 1978, Roy McIntosh (decedent) suffered a serious stroke that physically disabled him until his death in 1996. In 1990, he opened an IRA with Advest, Inc., "a publicly traded, diversified financial services company," and designated the respondent, his youngest son, as sole beneficiary. At about the same time, he began to alter the disposition of his estate. Between 1990 and 1994, he revised his will four times, eventually leaving his estate in equal shares to his three sons. His prior wills had bequeathed the majority of his estate to the respondent. During this time he also changed the named beneficiary on his life insurance policies to benefit his three sons equally and sold a valuable coin collection, splitting the proceeds evenly among his sons. At no time prior to his death, however, did the decedent change the designated beneficiary of his IRA.

From at least 1990 until his death, the decedent was represented by counsel who prepared his wills, coordinated his estate, and, toward the end of his life, handled his financial affairs. Counsel prepared an annual statement of the decedent's assets, which included the IRA, as well as an accounting of his life insurance policies. After the IRA was established, the decedent did not discuss with his attorneys the named beneficiary on that account. He was aware of the account's existence, however, because the account was used to make his monthly nursing home payments and was included on the yearly statement of his assets, which he reviewed.

After the decedent's death in March 1996, the respondent, who was the executor of the estate, wrote to the petitioner:

> Dad appointed me to be executor of his estate. His wishes were that his assets were to be divided equally between his three sons, and I intend to honor those wishes. I intend to be completely fair to you . . . . I trust that your behavior during the coming months will be perfectly upright as well.

The respondent later wrote to the petitioner:

> Make the most of your third of Dad's estate. . . . Do not waste your resources suing your own family . . . .
>
> I also am willing to divide Dad's IRA equally, though I am under no legal obligation to do so. I am trying hard to be fair to you. Please be reasonable . . . .
>
> As Executor, my duty to Dad is to follow his written instructions and to do what I think he would have wanted . . . .
>
> My duty to you as Executor is to help you get the one-third that you're entitled to, period.

Sometime after the second letter, the respondent changed his mind and decided to divide the IRA among himself, his brother Todd, and a charity.

The petitioner filed suit claiming that the decedent's intent was to split his estate, including the IRA, equally among his three sons, and, alternatively, that the respondent had renounced his right to claim sole ownership of the IRA. Both parties filed motions for summary judgment. By order dated January 14, 1999, the probate court denied the petitioner's motion and ruled in favor of the respondent. "[F]or the purpose of ruling on the Cross-Motions for Summary Judgment," the probate court ruled that from late 1994 to his death in 1996, the decedent "intended that all his assets, including the Advest IRA account, be distributed in equal shares among his three sons." The court extrapolated from the facts as presented by the parties that due to his physical or mental condition, the decedent either "did not remember . . . that he had designated his son, David, as the sole beneficiary of the Advest IRA account . . . [or] . . . was unable to communicate his intention to change the designation of beneficiary in the Advest IRA account to his three sons in equal shares." The probate court declined to impose a constructive trust or find that the respondent had renounced his ownership of the IRA. This appeal followed.

On appeal, the petitioner argues that the probate court erred in: (1) applying certain banking statutes to find that the respondent was entitled to retain ownership of the IRA; (2) failing to impose a constructive trust; and (3) finding that the respondent had not renounced his ownership of the IRA.

## I

The petitioner argues that in ruling on the cross-motions for summary judgment, the probate court improperly relied on four State banking statutes that it applied by analogy to the case before it. In its order, the court referenced the statutes for support:

> N.H. R.S.A. 384, 384-D, 386 and 563-C evidence an intent to impose finality on the distribution of bank accounts, trust accounts, bank IRA accounts and securities. The Advest IRA account at issue here is such an instrument and should be accorded the same finality.

In its brief, the petitioner focuses little attention on the statutes themselves, but argues at length that the approach adopted by the probate court was too restrictive and mechanical. He argues that such an approach should not be used to determine ownership of the IRA to the exclusion of fundamental equitable principles. In sum, the petitioner contends that the "mandatory command of a statute must always be balanced against the conscience of equity."

▮ We need not decide whether the statutes referenced by the probate court should be analogously applied because the court properly applied principles of settled law in concluding that the respondent was the lawful owner of the IRA. *Cf. Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569 (1995) (trial court's ruling will be upheld when correct result reached and valid alternative grounds exist to reach that result). As the probate court concluded, the decedent's intent "at some other point in time" is not relevant in deciding the respondent's entitlement to the IRA where there was an "explicit written beneficiary designation in the initial IRA agreement which remained unchanged as of the date of the decedent's death." We have upheld the binding effect of such written beneficiary designations in other contractual arrangements, such as life insurance, *see Dubois v. Smith*, 135 N.H. 50, 60 (1991), and annuity pension accounts, *see Estate of Frederick v. Frederick*, 141 N.H. 530, 532-33 (1996). We see no reason to reach a different result with respect to IRA accounts.

Life insurance, joint bank accounts with right of survivorship, and annuities share many common characteristics with IRA accounts. *See E.F. Hutton & Co., Inc. v. Wallace*, 863 F.2d 472, 473 (6th Cir. 1988) (comparing beneficiary designations for IRA accounts to those for life insurance policies); *see also Frederick*, 141 N.H. at 533 (citing similarities between beneficiaries in life insurance and annuities contexts); RSA 384:28 (1998); RSA 384-D:1, I(c) (1998).

Most importantly, for each of these, the originator designates a beneficiary who maintains an expectancy during the originator's life and whose rights vest either upon the originator's death, or when the originator is prohibited by law from changing the designated beneficiary. *See Dubois*, 135 N.H. at 58 (life insurance policy paid to beneficiaries named in divorce decree, not those named on policy). Thus, the proceeds of these types of accounts or policies are not a part of an originator's estate, but instead pass automatically at death to the named beneficiary. *See id.* at 61. For each, it is the originator's burden to change the named beneficiary. *See Frederick*, 141 N.H. at 532.

During his lifetime, the decedent did not attempt to change the named beneficiary. *Cf. Dubois*, 135 N.H. at 60-61 (noting that evidence of decedent's intent regarding beneficiary and estate disposition, in light of decedent's familiarity with process to change beneficiaries, was not clear and convincing proof required for reformation of divorce decree). The petitioner cites no case where a designated IRA beneficiary has been denied ownership in the absence of an express change of the designated beneficiary or a court order mandating a particular beneficiary. We agree with those jurisdictions which uphold lawful beneficiary designations and the procedures that govern changing beneficiaries. *See, e.g., Fitzpatrick v. Small*, 564 N.E.2d 1035, 1037 (Mass. App. Ct. 1991). Absent a court order to the contrary, we will not recognize a later change of intent not confirmed by strict compliance with the procedures required by each contract, *see Frederick*, 141 N.H. at 532 ("Placing the obligation to change the beneficiary designation on the policy holder ensures a smooth transfer of funds . . . following the policy holder's death, and reduces the incentives for costly and divisive litigation."); *Dubois*, 135 N.H. at 56 ("An insured has the right to change the designation of a policy's beneficiary. . . . It is, however, possible for the insured to contract this right away in a divorce stipulation." (Citations omitted.)).

II

■ The petitioner next argues that the probate court should have imposed a constructive trust on the IRA for the benefit of the decedent's three sons equally. The respondent contends that the requirements for a constructive trust were not met and that the decedent's unambiguous intent when he created the IRA in 1990 with the respondent as the designated beneficiary should control.

Although there are no rigid requirements for imposing a constructive trust, a party generally must prove by clear and convincing

evidence that: (1) a confidential relationship exists between two people; (2) one of them transferred property to the other; and (3) the person receiving the property would be unjustly enriched by retaining it, regardless of whether the person obtained it honestly. *See In re Estate of Cass*, 143 N.H. 57, 60 (1998).

██ The petitioner filed an action to enlarge the decedent's probate estate to include the Advest IRA distribution pursuant to the terms of the decedent's will. Under the facts of this case, the elements of constructive trust do not apply to the transfer between the decedent and Advest. *See id.* The decedent did not have a "confidential relationship" with Advest, nor is Advest unjustly enriched. *See id.* (defining "confidential relationship" as "family relationship in which one person justifiably believes that the other will act in his or her interest"). No action was filed against the respondent individually and no claims of wrongdoing in connection with the transfer to the IRA in 1990 are asserted against him. Furthermore, the mere fact that the respondent received money to which other family members may feel entitled does not constitute unjust enrichment. *See id.* Accordingly, we agree with the probate court that under these facts, the doctrine of constructive trust does not apply.

## III

Finally, the petitioner asserts that the respondent in his two letters renounced his sole ownership of the IRA account and expressed his intent to split it equally among the three brothers. He contends that given the probate court's determination that the decedent "intended that all his assets, including the Advest IRA account, be distributed in equal shares among his three sons," the account should have been so divided. The respondent asserts that his letters represented attempts to settle a family dispute over his father's estate and do not satisfy the requirements for a renunciation.

██ The doctrine of renunciation applies where an individual has made "an express, clear and unequivocal renunciation of [his] rights to [property]. . . . [It] must be made with the full knowledge of the effects, legal and practical, of the act or the statement made, and . . . must be intelligently done, [with full awareness] of all the surrounding circumstances." *Boucher v. Johnson*, 117 N.H. 343, 346 (1977).

██ In this case, the respondent's only express statement about the IRA was that he was *"willing* to divide [the decedent's] IRA

equally." (Emphasis added.) This is not an unequivocal statement giving up his legal right to the property. While the respondent's first letter to the petitioner made references to the fact that he intended to heed his father's wishes to divide his assets equally, the passage does not clearly indicate that "the assets" included the Advest IRA account. Renunciation, therefore, was not established.

*Affirmed.*

NADEAU, J., concurred; GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.