**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0358, <u>Christy Silver m/n/f Rome Joseph Poto v. Lenora Poto & a.</u>, the court on September 30, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The petitioner, Christy Silver, as mother and next friend of her son, Rome Joseph Poto (child), appeals a decision of the Superior Court (<u>Garfunkel</u>, J.) determining that the respondents, Lenora and Mario Poto, Jr., are entitled to the proceeds of a life insurance policy issued to the decedent, Mario Poto, III, their son and the child's father.  We reverse.

The record supports the following facts.  In 1994, the decedent obtained a $240,000 term life insurance policy, from AIG Life Insurance Company, through his employment with Mario's Classic Mirror Co.  The decedent named the respondents, his parents, as the beneficiaries of the policy.  The same policy remained in effect from 1994 until the decedent's death, and the premium, fifteen dollars per week, never changed.

In 1999, shortly after the birth of the child, the decedent and the petitioner were divorced.  The divorce decree provided that the decedent "shall maintain life insurance in the gross amount of $225,000 with the child as named beneficiary."  The decree stated that the decedent "shall maintain said insurance as long as it is available to him through his employment at reasonable cost."  The decedent never changed the beneficiary of his life insurance policy to the child, nor did he obtain any other life insurance coverage naming the child as beneficiary.

In September 2005, AIG sent Mario's Classic Mirror Co. a letter that stated, in part, as follows:

Re: Deduction Method of Billing- Contract No. LB0643

Dear Sirs,

We are pleased that you elected to establish a payroll deduction life insurance plan for your employees.  However, by AIG's procedural requirements and for the reason that this type of product is no longer being sold, companies not maintaining the minimum participation of ten (10) employees, not including spouses or

dependents, must be removed from the list bill method of payment. Our records indicate that your company's participation is less than the minimum. At this time, we are requesting that you please comply with the following procedures:

❖ Please discontinue payroll deductions of AIG Insurance premiums for participating employees, and remit any premiums collected to date within the next three (3) weeks.
❖ Policy owners will be informed of other methods of billing offered by our company, such as direct billing to their home address and the option of premium payment through their checking or saving[]s account.

Shortly thereafter, the respondents began paying the premiums on the decedent's policy.

The decedent died in an automobile accident in 2008. AIG distributed the proceeds of the policy to the respondents. The respondents were not aware of the terms of the divorce decree until after the decedent died. The petitioner filed this action seeking a declaratory judgment that the child was the intended beneficiary of the life insurance policy and requesting that the court impose a constructive trust over the proceeds of the policy.

Following a bench trial, the trial court found that prior to the September 2005 AIG letter, the decedent's life insurance policy satisfied the condition in the divorce decree that the decedent maintain life insurance "as long as it is available to him through his employment." The trial court determined that, in the September 2005 letter, AIG "changed their internal policy" such that the decedent's employer "no longer qualified for their group insurance plan," and that, although the decedent "retain[ed] the policy, he did so thereafter on an individual basis." The trial court concluded that, because "the AIG policy ceased to be offered through [the decedent's] employment," the condition in the divorce decree was no longer satisfied, and the decedent "was no longer obligated to maintain insurance for his son." Accordingly, the trial court denied the petitioner's request for a declaratory judgment and declined to impose a constructive trust. This appeal followed.

On appeal, the petitioner argues that the trial court erred by concluding that the language in the decree stating "as long as it is available to him through his employment" constituted a condition of the decedent's obligation to maintain life insurance for the benefit of the child. She further contends that, even if that language was a condition of the decedent maintaining life insurance, the trial court erred by finding that the condition was no longer met. The respondents counter that the language in the divorce decree created a condition and the trial court correctly determined that, after September 2005,

the condition was no longer satisfied because the policy was no longer "available to [the decedent] through his employment."

We begin by addressing the petitioner's argument that the disputed language did not constitute a condition of the decedent's obligation to maintain life insurance. Resolving this argument requires us to interpret the divorce decree. "The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court de novo." Estate of Frederick v. Frederick, 141 N.H. 530, 531 (1996). "In ascertaining the meaning of the divorce decree, we look to the plain meaning of the language and at the meaning of the language in the context of the entire decree." In the Matter of Floros and Bell, 145 N.H. 401, 403 (2000) (quotation, brackets, and ellipsis omitted). "The divorce decree . . . must be interpreted in light of the facts and circumstances known to the parties and the court at the time the court issued the decree . . . ." Laflamme v. Laflamme, 144 N.H. 524, 527 (1999).

To determine whether the language in the divorce decree created a condition, we first look to its plain language. The language at issue provides that the decedent "shall maintain life insurance in the gross amount of $225,000 with the child as named beneficiary . . . . as long as it is available to him through his employment at reasonable cost and as long as the child remains a full-time student." (Emphasis added.) The phrase "as long as" means, in relevant part, "provided that." Random House Webster's Unabridged Dictionary 1132 (2d ed. 2001). "[P]rovided," in turn, means "on the condition or understanding (that); providing." Id. at 1556. Thus, under the plain unambiguous meaning of the words used in the divorce decree, the decedent was required to maintain life insurance with the child as the beneficiary on the conditions that: (1) it was "available to him through his employment"; (2) "at reasonable cost"; and (3) "the child remains a full-time student."

We next turn to the petitioner's argument that the trial court erred when it concluded that this condition failed. Notably, the parties agree — and the trial court found — that, prior to the September 2005 letter, the condition that the policy was "available to him through his employment" was satisfied. Therefore, there is no dispute that, if the decedent had died prior to the September 2005 letter, the child would have a superior right to the proceeds under our decision in Dubois v. Smith, 135 N.H. 50 (1991). Accordingly, the narrow question before us is whether the change announced by AIG in the September 2005 letter compels a different conclusion.

In Dubois, the decedent policyholder, upon divorcing his first wife, was subject to a divorce decree that required him to designate his sons as the beneficiaries of his then-existing insurance policies. Dubois, 135 N.H. at 52, 57. However, the decedent did not change his list of beneficiaries to comply with the decree. Id. at 52-53. We observed that "children from a defunct

3

marriage have an interest in life insurance proceeds superior to that of the named beneficiary where a divorce decree or agreement required the insured to maintain insurance for them and the insured . . . did not name them beneficiaries." Id. at 56 (quotation omitted). Accordingly, we held that, with regard to the existing policy, the decedent's "sons acquired a vested right to the proceeds superior to anyone else named beneficiary." Id. at 57.

Here, the trial court concluded that the condition in the divorce decree was no longer satisfied because, after September 2005, the decedent's employer "no longer qualified for [the AIG] group insurance plan." The trial court reasoned that although the decedent "retain[ed] the policy, he did so thereafter on an individual basis," and it ruled that, because of this change, the condition in the decree "ceased to be effective" and the child no longer had a superior right to the proceeds under Dubois.

There is no dispute that the policy that the decedent first purchased in 1994 — which the parties agree satisfied the condition in the divorce decree prior to 2005 — continued in effect until his death in 2008. In its September 2005 letter, AIG did not state that an existing group insurance policy had been extinguished. Nor did it state that new individual policies would be issued. Rather, it advised that policy owners would be informed of alternative methods of billing. This, according to AIG, was necessary because the decedent's employer no longer had a minimum of ten employee-participants, and thus it "must be removed from the list bill method of payment." Finally, there is no evidence in the record that the decedent was sent a notice terminating a group policy, or that the decedent was issued a new individual policy after the September 2005 letter.

The conclusion that the policy at issue was at all times an individual policy issued through the decedent's employer is further bolstered by the undisputed testimony of respondent Lenora Poto, who acted as the office administrator for the decedent's employer. Poto testified that, prior to September 2005, all employees "had a choice on whether [they] wanted [life insurance] or not." After electing coverage, each employee "privately" determined with AIG the amount of coverage and the premium that each would pay. She testified that the employer "had no control over" the employees' policies, which were "private between the [insurance] agents and the employee," and acknowledged that the company's role was "just . . . administrative[,] to make sure that the premiums were deducted from [employees'] pay on a weekly basis."

On the basis of the undisputed facts, we conclude that the decedent's policy was never group life insurance. Rather, it was always an individual policy. The "change" that was announced in the 2005 AIG letter was only an administrative modification in the method of premium payment, and it did not in any way alter the terms or nature of the policy itself: the decedent's policy

was at its inception — and at the time of his death — an individual policy. Accordingly, we conclude that, at the time of the decedent's death in 2008, the policy continued to satisfy the condition in the divorce decree: that it be "available to him through his employment."

A divorce decree must be "interpreted in light of the facts and circumstances known to the parties and the court at the time the court issued the decree." Laflamme, 144 N.H. at 527. We are not persuaded that it was the intent of the family court that the change in payment method announced in the AIG letter would relieve the decedent of his obligation under the divorce decree to maintain life insurance for the benefit of his son, or that such an administrative change would deprive the child of the financial security envisioned by the court. See Dubois, 135 N.H. at 57-58 (rejecting an interpretation of the divorce decree that would "obviously run counter to the intention of the parties and against the meaning of the court order").

The condition in the divorce decree that the decedent maintain life insurance with the child as the beneficiary "as long as it is available to [the decedent] through his employment" was satisfied for the 11-year period between 1994 and September 2005, it remained satisfied after the employer's receipt of the AIG letter, and it remained satisfied in 2008 at the time of the decedent's death. Accordingly, we hold that, under Dubois, the child has a right to the proceeds of his father's life insurance policy superior to any rights of the respondents.

Reversed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

5