Rockingham
No. 79-413

## HELLAS FAMILY RESTAURANTS, INC.

### v.

## G & P FAMILY RESTAURANTS, INC. *& a.*

December 17, 1980

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* orally), for the plaintiff.

*Kearns & Colliander*, of Exeter (*Peter F. Kearns* orally), for defendant Standard Fire Insurance Company.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Alan B. Rindler* orally), for defendant Olde Colony Insurance Agency, Inc.

BROCK, J. This case involves a bill in equity brought by the plaintiff, Hellas Family Restaurants, Inc., to reform an insurance policy issued by the Standard Fire Insurance Company. The plaintiff seeks to have its name inserted in the policy as the mortgagee, replacing George Scrivanos who was named as mortgagee and is the sole stockholder of the plaintiff corporation. Trial before a Master (*Charles T. Gallagher*, Esq.) resulted in a recommendation that reformation be denied and the case dismissed. *Bean*, J., approved the master's report and reserved and transferred plaintiff's exceptions to this court. We affirm.

The plaintiff corporation owned and operated a Burger Chef restaurant located in Tewksbury, Massachusetts. In October 1975, it entered into a purchase-and-sale agreement with G & P Family Restaurants, Inc. Under the terms of the agreement, the plaintiff sold the business and the personal property but retained ownership of the real estate, which it leased to G & P. As part of the parties' financing arrangements, G & P gave a promissory note in the amount of $141,760.13 to the plaintiff.

Prior to the sale, the plaintiff had obtained a Special Multi-Peril Policy through a New Hampshire insurance agency, Olde Colony Insurance Agency, Inc., insuring the business, real estate and personal property. The policy was issued by the defendant Standard Fire Insurance Company.

After the sale of the business and personal property, Mr. Scrivanos contacted William Kyriakakis of the Olde Colony Insurance Agency in order to effectuate certain changes to the insurance policy. Mr. Scrivanos, who speaks English only as a second language, gave instructions to Mr. Kyriakakis which did not accurately reflect the true state of affairs.

According to the master's findings, which are adequately supported by the evidence, Mr. Scrivanos' instructions were that: he had sold the business to G & P, that G & P owed *him* money from the sale, that *he* wanted to be protected under the insurance coverage and that the insurance on the building should be increased to $125,000. Mr. Scrivanos did not show Mr. Kyriakakis any of the documents relating to the sale. This point is critical because, under the terms of the sale of the business and personal property, G & P owed money to the Hellas Family Restaurants,

Inc., not to Mr. Scrivanos personally. Mr. Kryiakakis was aware, however, that the building had not been sold to G & P and that the Hampton National Bank held a first mortgage on the real estate in excess of $125,000.

Following his conversation with Mr. Scrivanos, Mr. Kyriakakis relayed the information given him to the insurance carrier. Accordingly, on October 1, 1975, a new endorsement was issued on the policy which provided that the named insured was changed from Hellas Family Restaurants to G & P and that coverage on the building was increased to $125,000. The endorsement further provided that "the interest of George Servinos [*sic*] . . . as second mortgagee is added to the policy." All of the parties agree that Servinos is a misnomer for Scrivanos and that the policy should be reformed to that extent. The plaintiff has also argued that a copy of the endorsement change was not mailed to Mr. Scrivanos. However, the master made no such finding, nor was one requested.

On October 7, 1976, a fire destroyed the building and its contents. The plaintiff, alleging mutual mistake, then brought this action to reform the policy in an effort to protect its interest in the contents of the building covered by the security agreement with G & P.

Following a hearing, the master found that "[t]he mistake, if any was made, was made by Mr. Scrivanos in not describing adequately the details of the financing of the sale. *Mr. Kyriakakis carried out Mr. Scrivanos' instructions to the letter.* The mistake was unilateral." (Emphasis added.)

██ ██ In order for a party to prevail in a reformation action, he must demonstrate by "*clear* and *convincing* [evidence] that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing." *Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 237, 401 A.2d 201, 204 (1979). The plaintiff's burden of proof in a reformation action is a heavy one, and here the master found that it had not been met. In point of fact, he found that Mr. Scrivanos' instructions were carried out "to the letter" by Mr. Kyriakakis. It is this finding that distinguishes the instant case from *Bergeron v. Fontaine*, 109 N.H. 370, 256 A.2d 656 (1969), upon which the plaintiff relies. In *Bergeron*, the insurance agent made a mistake in carrying out the instructions of the insured. *Id.* at 372, 256 A.2d at 658. In the instant case, the agent made no such mistake.

The fact that Mr. Scrivanos speaks English poorly is not, by itself, sufficient to warrant reformation. *Cf. American Fidelity Co.*

*v. Schemel,* 103 N.H. 190, 195, 168 A.2d 478, 482 (1961). There is nothing in the record to suggest that Mr. Kyriakakis was not dealing in good faith. It is clear that the parties had dealt with each other before and there is no indication that communication problems had caused difficulty in those transactions.

Because the record discloses sufficient evidence to support the master's findings, we uphold them. *Erin Food Servs., Inc. v. 688 Props., supra* at 237, 401 A.2d at 204. Accordingly, the order is

*Exceptions overruled; affirmed.*

All concurred.