Rockingham
No. 92-716

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY

v.

LAUREEN RAYMOND, ADMINISTRATRIX OF THE ESTATE OF
MARCEL RAYMOND

December 3, 1993

*McDonough & O'Shaughnessy, P.A.,* of Manchester (*Robert G. Whaland* on the brief and orally), for the plaintiff.

*James A. Normand, P.A.,* of Manchester (*Marc W. McDonald* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiff, Prudential Property & Casualty Insurance Company (Prudential), appeals the Superior Court's

(*Smukler*, J.) ruling that the defendant, Laureen Raymond, administratrix of the estate of Marcel Raymond, may "stack" coverage under the parties' insurance contract. We reverse.

The parties' contract consists of five documents: (1) the application for coverage; (2) the declaration page; (3) the "easy reading" policy; (4) the endorsement booklet; and (5) the revisions to the endorsement booklet. The parties agree that the endorsement booklet contains a clear and unambiguous "antistacking" provision, labeled "PAC 2219A." The "easy reading" policy states that

> "[t]he endorsements are another part of this policy. *Only those endorsements whose numbers appear on the Declarations Page are a part of your policy. They add to or change parts of the policy.* These changes may be necessary to conform to the laws of your state or to new programs we've implemented. Or they may provide optional coverages you've paid for."

(Emphasis added.) The declarations page contains a section labeled "Endorsements," in which the following numbers appear on a line: "212 226 243 286 709 9032219A." The endorsement booklet contains a PAC endorsement "903" and a "2219A," but not a PAC "9032219A." Prudential asserts that the endorsement line should have read "212 226 243 286 709 903 2219A," and that the lack of a space between the last two numbers resulted from a typographical error. The superior court ruled that this error created an ambiguity rendering the antistacking provision inapplicable. Prudential appealed.

■ The defendant is correct that ambiguous policy language must be construed against the insurer. *See Trombly v. Blue Cross/ Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980). Language is ambiguous, however, only if "the contracting parties reasonably differ as to its meaning." *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117, 121, 536 A.2d 164, 166 (1987) (quotation omitted). After reviewing the policy as a whole, we conclude that the parties cannot reasonably differ as to the meaning of "9032219A."

First, we note that "9032219A" stands out from the other numbers listed on the "Endorsements" line of the declarations page. It is the last in the series, ends in a letter (the others do not), and is more than twice as long as any other. Thus, "9032219A" is not easy to ignore. Turning to the endorsement booklet, we find nineteen endorsement numbers listed in the table of contents, each preceded by "PAC" and followed by a brief, descriptive phrase. The numbers are listed in numerical order, just as on the "Endorsements" line. PAC "2219A" is

the last one listed. The table covers two facing pages, with PAC "903" appearing at the end of the first page and PAC "2219A" at the end of the second. Next to "2219A" are the words "STACKING OF COVERAGES PROHIBITED." As noted above, PAC "9032219A" does not exist.

A person looking for "9032219A" could not avoid noticing that a PAC "903," but not a "9032219A," exists. It is but a very small intellectual step to wonder if a "2219A" might be found. The layout of the table of contents makes it difficult to overlook the entry "2219A." The eye is virtually drawn to it. We find it hard to believe that a policy holder wishing to discover the significance of "9032219A" would turn to the endorsement booklet's table of contents and not conclude that a simple typographical error had been made on the declarations page. Although we must view the parties' policy from the perspective of a lay person of average intelligence, *see Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 415, 618 A.2d 777, 785 (1992), it would be a sad indictment of our populace to assume that such a person, undertaking a "more than casual reading of the policy," *id.* at 410, 618 A.2d at 781, could not figure out that the anti-stacking provision applies here.

The defendant makes two other arguments we must address. First, she argues that a reasonable reading of the application for coverage would lead a policy holder to believe that stacking is permitted. She notes that the "easy reading" policy expressly makes the application "a part of the policy" and that, when read in isolation, the application can be interpreted to allow stacking. We point out, however, that the "easy reading" policy declares that endorsements "add to or change parts of the policy." Hence, endorsement 2219A added to or changed the policy — including the application — to prohibit stacking. We see no ambiguity.

Second, the defendant argues that endorsement 2219A should not apply to prohibit stacking because the "easy reading" policy does not clearly explain that an endorsement may restrict coverage, as well as expand it. To bolster this claim, she cites to policy language such as: "This [endorsement] booklet contains most of the endorsements we offer in your state . . . . [T]hey may provide optional coverages you have paid for." The "easy reading" policy, however, also states that the endorsements "may be necessary to conform to the laws of your state or to new programs we have implemented" and that "[t]hese endorsements add to or change parts of the policy." These statements do not imply that an endorsement can

*only* expand coverage. We do not think that an ordinarily intelligent insured undertaking a more than casual reading of the entire policy would be led astray. *See id.*

*Reversed.*

BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: I believe, as the trial court did, that the error in the policy created an ambiguity which rendered the anti-stacking provision inapplicable on the facts before us, and, accordingly, I would affirm.