Grafton
No. 95-335

ROBERT P. AND LORETTA N. BROUILLARD

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY

April 8, 1997

*Law Offices of David J. KillKelley*, of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiffs.

*Bouchard & Mallory, P.A.*, of Manchester (*Mark L. Mallory* on the brief and orally), for the defendant.

THAYER, J. The plaintiffs, Robert P. and Loretta N. Brouillard, appeal a ruling of the Superior Court (*Morrill*, J.) denying a petition for declaratory judgment. The Brouillards sought to establish their right to underinsured motorist benefits from the defendant, Prudential Property & Casualty Insurance Company (Prudential). We affirm.

The trial court found the following facts. On March 1, 1989, Robert Brouillard was injured while riding as a passenger in an automobile operated by Philip Bourgoine. Mr. Brouillard collected $100,000 from Bourgoine's insurance carrier for his injuries. The Brouillards then sought underinsured motorist benefits from their own insurance carrier, Prudential. After Prudential denied any obligation to provide underinsured motorist coverage to the Brouillards, they filed the instant petition for declaratory judgment. The superior court denied the petition and the Brouillards appeal.

On appeal, the Brouillards argue: (1) that their policy permits "stacking" the insurance coverage on all four of their automobiles to determine the total limits of underinsured motorist benefits; (2) that even if the provisions of the policy prohibit "stacking," they were not properly notified of the anti-stacking provisions as required by RSA 412:2-c (1991); (3) that the limits of coverage, if any, should be based on the "per accident" provision of the policy, rather than the "per person" provision; and (4) that Mrs. Brouillard has a separate claim for loss of spousal consortium with a separate $100,000 limit of underinsured motorist coverage.

In the fall of 1982, when Prudential issued its policy to the Brouillards, a Prudential agent personally delivered a package of materials to their home, including an "Easy Reading Family Auto Policy" (Easy Reading Policy) and a 1980 New Hampshire Automobile Endorsement Booklet (Endorsement Booklet). It was Prudential's routine practice to place the materials in a clear plastic sleeve and fold them together. The Easy Reading Policy contained the primary insurance provisions. The 1980 Endorsement Booklet contained additions, revisions, and clarifications to the Easy Reading Policy, including an anti-stacking provision. The 1980 Endorsement Booklet, however, was not physically affixed to the Easy Reading Policy.

## I. Intra-Policy Stacking

The plaintiffs first argue that their policy should be interpreted to allow "stacking" of underinsured motorist coverage.

> Intra-policy stacking allows the insured to aggregate the limits of underinsured motorist coverage by multiplying the stated limit of liability by the number of vehicles covered under a policy. Although stacking of underinsured motorist coverage is generally allowed, insurance companies are free to limit their liability and prevent stacking through the use of clear and unambiguous policy language.

*U.S. Automobile Assoc. v. Wilkinson*, 132 N.H. 439, 443, 569 A.2d 749, 751 (1989) (quotations, citations, and brackets omitted). Like all contracts, "[t]he interpretation of insurance policy language is ultimately an issue of law for this court to decide." *Whitcomb v. Peerless Ins. Co.*, 141 N.H. 149, 150, 679 A.2d 575, 576 (1996). "In construing insurance policy language which purports to limit liability or prevent stacking, we employ a strict construction standard which requires that ambiguities in insurance policies be construed in favor of the insured and against the insurer." *Wilkinson*, 132 N.H. at 443, 569 A.2d at 751; *see Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 770-72, 423 A.2d 980, 984-85 (1980). "We will not, however, force an ambiguity simply to resolve it against an insurer." *Whitcomb*, 141 N.H. at 151, 679 A.2d at 577. In determining whether an ambiguity exists, "we take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *Id.* at 150, 679 A.2d at 576-77 (quotation and brackets omitted).

The anti-stacking provision contained in Prudential's 1980 Endorsement Booklet is PAC 2219A which provides:

### STACKING OF UNINSURED MOTORISTS COVERAGE PROHIBITED

It is agreed that with respect to the Uninsured Motorists Coverage under *How We'll Settle A Claim (Part 4)*, the following is added:

If you or any other person insured under this policy are in an accident while in a car covered by this policy, we won't pay more than the limit of the applicable coverages for that particular car (as shown on the Declarations Page). If you or other insured persons are in an accident while in a car that is not covered under this policy or while a pedestrian, we won't pay more than the limits of applicable coverages which you have on any one of your cars (as shown on the Declarations Page). In neither case can coverages on other cars be added to or stacked upon the coverage on the particular car involved.

The Brouillards argue that PAC 2219A is ambiguous, and therefore we should construe the provision in their favor and permit stacking. We disagree.

■ The first and most obvious indication that the policy prohibits stacking is the title of the provision: "STACKING OF UNINSURED MOTORIST COVERAGE PROHIBITED." The plain and ordinary meaning of these words prohibits stacking. *See Whitcomb*, 141 N.H. at 150, 679 A.2d at 576. The Brouillards argue, however, that Bourgoine was an *underinsured* motorist, not an *uninsured* motorist. This interpretation of the provision overlooks its context within the rest of the policy. *See id.* at 150, 679 A.2d at 576-77.

The 1980 Endorsement Booklet explicitly incorporates PAC 2219A into "Part 4" of the policy. Nowhere does Part 4 distinguish between uninsured and underinsured motorist benefits. Part 4 generally describes the rights of an insured who is injured by a driver who "doesn't have proper insurance." A driver who "doesn't have proper insurance" is defined in the section as a driver with "no liability insurance or . . . inadequate . . . liability insurance coverage." None of the thirty-five provisions of Part 4 make any distinction between uninsured motorist coverage and underinsured motorist coverage. Additionally, PAC 240 in the 1980 Endorsement Booklet, the provision which determines when Prudential provides *underinsured* motorist coverage, is titled "SUPPLEMENTARY

*UNINSURED* MOTORIST INSURANCE." (Emphasis added.) The fact that underinsured motorist coverage is provided in a section titled uninsured motorist insurance further indicates that uninsured motorist benefits and underinsured motorist benefits are subject to the same limitations.

There are additional reasons why PAC 2219A prohibits stacking of underinsured motorist coverage. PAC 2219A expressly states, "[i]f you or other insured persons are in an accident while in a car that is not covered under this policy . . . we won't pay more than the limits of applicable coverages which you have on any one of your cars." Once again, the plain and ordinary meaning of the phrase "on any one of your cars" demonstrates that an insured may not aggregate the coverages on all of the insured's cars under the policy. *See id.* at 150, 679 A.2d at 576.

The Brouillards finally argue that PAC 2219A is void because it was not included on a Change Endorsement page provided to the Brouillards when they renewed their policy with Prudential. The Brouillards erroneously conclude that Prudential's failure to list PAC 2219A on the Change Endorsement page signifies that Prudential eliminated the provision from the policy. *See Prudential Prop. & Cas. Ins. Co. v. Raymond*, 138 N.H. 17, 18-19, 634 A.2d 1015, 1016-17 (1993). The Change Endorsement page was issued to the Brouillards to document the new automobile that they added to the policy, not to change the provisions in the Endorsement Booklet. In fact, no endorsements were listed on the "endorsements" line of the change endorsement page. The Change Endorsement page unequivocally states that there were "NO OTHER CHANGES TO POLICY PROVISIONS OR COVERAGES," and therefore, PAC 2219A, along with other basic coverages included in the endorsement booklet, remained in effect.

## II. RSA 412:2-c Notice Requirement

 The Brouillards next argue that Prudential did not physically affix the 1980 Endorsement Booklet to the Easy Reading Policy as required by RSA 412:2-c, and therefore Prudential did not properly notify the Brouillards of the anti-stacking provision contained in the endorsement booklet. The trial court ruled, however, that RSA 412:2-c only applies to subsequent revisions to the original policy. We affirm the trial court's ruling on alternative grounds. *See In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990).

"This court . . . is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole." *Pope v. Town of Hinsdale*, 137 N.H. 233, 237, 624 A.2d 1360, 1362 (1993).

"In determining intent, we draw inferences concerning a statute's meaning from its composition and structure. This court ascribes to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Stevens v. Town of Goshen*, 141 N.H. 219, 221, 683 A.2d 814, 815 (1996) (quotation and brackets omitted).

RSA 412:2-c states:

> In the event that a company or filing or rating organization eliminates or reduces coverages, conditions or definitions in its policies issued under this section other than at the request of a policyholder, the company must attach to the policy a printed notice in each such policy explaining clearly what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reduced and eliminated coverages are not contained in the printed notice attached to its policies, then such coverages, conditions or definitions shall remain in full force and effect without such reductions or eliminations. The requirements of this section shall apply only to such policies renewed or endorsed with the same company.

The Brouillards argue that the word "attach" should be construed to mean "physically affix." As the Endorsement Booklet containing the anti-stacking provision was not physically affixed to the Easy Reading Policy, they argue that the policy is "in full force and effect without such reduction."

The definition of "attach" is to "make fast or join (as by string or glue)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 140 (unabridged ed. 1961). In this case, the superior court found that a Prudential agent delivered the Easy Reading Policy and the 1980 Endorsement Booklet to the Brouillards, folded together, in a clear plastic sleeve. While the definition of "attach" states, as an example, "by string or glue," *id.*, we do not believe that staples or glue are the only methods of joining or attaching documents. Consequently, we hold that folding documents together in a clear plastic sleeve properly joins them within the meaning of "attach." RSA 412:2-c; *see Rozas v. La. Hospital Service, Inc.*, 413 So. 2d 364, 366 (La. Ct. App. 1982).

The Brouillards argue that there was insufficient evidence to prove that they received the 1980 Endorsement Booklet before Mr. Brouillard's accident. "Our function in reviewing the trial court's findings is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge." *Liberty Mut. Ins. Co. v. Custombilt, Inc.*, 128 N.H. 167,

170, 512 A.2d 1098, 1100 (1986) (quotation omitted). After review of the record, we hold that sufficient evidence existed for a reasonable person to find that the Brouillards received the 1980 Endorsement Booklet in 1982.

George Lavigne, a Senior Consultant in the Customer Service area for Prudential, testified that it was Prudential's routine practice to assemble, fold, and deliver a three-item packet of materials to new insureds, including an Easy Reading Policy, a 1980 Endorsement Booklet, and a document entitled "A Revision to your Automobile Endorsement Booklet." He testified that the documents typically were placed in a plastic sleeve envelope of approximately 4" X 9" dimensions. Mrs. Brouillard, on the other hand, testified that Prudential did not deliver a 1980 Endorsement Booklet when Prudential first issued the policy to the Brouillards in 1982. She testified that a Prudential agent personally delivered a packet of materials to the Brouillards, but the 1980 Endorsement Booklet was not included. Mrs. Brouillard asserts that she obtained a copy of the 1980 Endorsement Booklet by calling a Prudential customer service number in 1989, after the accident.

"When there is conflicting testimony, we defer to the findings of the trier of fact unless no reasonable person could have come to the same conclusion." *Maville v. Peerless Ins. Co.*, 141 N.H. 317, 320, 686 A.2d 1165, 1167 (1996) (quotation omitted). A reasonable person could have concluded, as the trial court did, that the Brouillards received the 1980 Endorsement Booklet with the original policy package, based on Mr. Lavigne's testimony. *See U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 153, 461 A.2d 85, 88 (1983).

The Brouillards also contend that they were not properly notified of a revised anti-stacking provision published in a 1982 edition of the New Hampshire Automobile Endorsement Booklet. We need not address the 1982 anti-stacking provision because the 1980 provision was sufficient to prohibit stacking.

*III. "Per Person"/"Per Accident" Limits of Coverage*

The Brouillards assert that the limits of coverage, if any, should be based on the $300,000 "per accident" provision, rather than the $100,000 "per person" provision. The provisions are defined thus:

**amount-per person**

The maximum amount we'll pay to an insured person under this part can be found on the Declarations Page under "PROTECTION AGAINST UNINSURED MOTORISTS-EACH PERSON."

**-per accident**

The maximum total amount we'll pay under this part for injuries in any one accident, regardless of how many people are involved, may be found on the Declarations Page under "PROTECTION AGAINST UNINSURED MOTORISTS-EACH ACCIDENT."

The Declarations Page provides "PROTECTION AGAINST UNINSURED MOTORISTS-EACH PERSON-$100,000 /EACH ACCIDENT-$300,000." Mr. Brouillard contends that the "per person" limit contradicts the "per accident" limit, and therefore, he should be entitled to the greater limit of $300,000.

Although Prudential may "limit its liability through clear and unambiguous policy language . . . , the policy language must be so clear as to create no ambiguity which might affect the insured's reasonable expectations." *A.B.C. Builders v. American Mut. Ins. Co.*, 139 N.H. 745, 748, 661 A.2d 1187, 1190 (1995) (quotations and citation omitted); *see Trombley*, 120 N.H. at 770-72, 423 A.2d at 984-85. "Per person"/"per accident" provisions, or, double limit coverage provisions, are standard for the insurance industry. *See Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. 148, 152, 467 A.2d 254, 257 (1983). Generally, the lower "per person" limit is intended to modify the higher "per accident" limit. *See id.* The fact that an insurance policy contains both a "per person" and "per accident" provision is not, by itself, sufficient to interpret the "per person" provision as limiting the "per accident" provision, however. *Id.* at 153, 467 A.2d at 257. In *Andrews*, we held that, among other factors, the absence of "any language which makes the 'per occurrence' limit subject to the 'per person' limit" rendered the uninsured motorist provisions in that case ambiguous, demanding an interpretation to the benefit of the insured. *Id.; see Gelinas v. Metropolitan Prop. & Liability Ins. Co.*, 131 N.H. 154, 170, 551 A.2d 962, 972 (1988).

In this case, unlike *Andrews*, the provisions are not without language making the "per accident" limit subject to the "per person" limit. As the superior court noted, "the positioning of the two provisions, one following the other, under the single caption 'amounts' leads to the logical construction that the 'per person' limit modifies the 'per accident' limit." Furthermore, the "per person" provision provides that "[t]he maximum amount we'll pay *to an insured person* under this part" is $100,000. (Emphasis added.) The "per accident" provision provides that "[t]he maximum *total* amount we'll pay under this part" is $300,000. (Emphasis added.) The language "to an insured person" in the first provision and the word "total" in the second provision indicate coexistent limits that apply

depending on who is injured in an accident. The policy unambiguously provides that an insured individual is always limited to $100,000 regardless of how many individuals are injured in a single accident. *Andrews*, 124 N.H. at 153, 467 A.2d at 257; *see A.B.C. Builders*, 139 N.H. at 748, 661 A.2d at 1190.

*IV. Loss of Consortium*

Mrs. Brouillard argues that her claim for loss of spousal consortium should be subject to a separate $100,000 limit of underinsured motorist coverage. The policy provides: "We'll pay persons insured under this part the amount they are legally entitled to recover as damages for bodily injury . . . ." The Brouillards claim that Mrs. Brouillard is an "insured," and that loss of consortium is a "damage" resulting from Mr. Brouillard's "bodily injury." This argument is without merit.

In both *New Hampshire Insurance Co. v. Bisson*, 122 N.H. 747, 748, 449 A.2d 1226, 1227 (1982), and *Bean v. Miller*, 122 N.H. 681, 684, 448 A.2d 424, 426 (1982), we held that even though a spouse has a separate cause of action for loss of consortium under RSA 507:8-a (1983) (amended 1986), loss of consortium is not a separate "bodily injury" triggering an additional limit of insurance coverage. This court has never defined loss of consortium as "bodily injury," *Bean*, 122 N.H. at 684, 448 A.2d at 426 (1982); *Lumbermens' &c. Co. v. Yeroyan*, 90 N.H. 145, 146, 5 A.2d 726, 727 (1939), and we decline to do so now. Furthermore, loss of consortium is a consequential damage derivative of the original insured's injuries, *see N.H. Insurance Co.*, 122 N.H. at 748, 449 A.2d at 1227, and therefore it is limited by the original insured's coverage. Accordingly, we hold that Mrs. Brouillard is not entitled to a separate $100,000 limit for her loss of consortium action.

*Affirmed.*

All concurred.