Strafford
No. 92-577

# A.J. CAMERON SOD FARMS, INC.

v.

# CONTINENTAL INSURANCE COMPANY & a.

September 18, 1997

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the briefs and orally), for the plaintiff.

*Ouellette, Hallisey, Dibble and Tanguay, P.A.*, of Dover (*William L. Tanguay* on the briefs and orally), for defendant Continental Insurance Company.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert G. Whaland* on the brief and orally), for defendant United States Fire Insurance Company.

HORTON , J. The plaintiff, A.J. Cameron Sod Farms, Inc., appeals the Superior Court's (*Temple*, J.) determination that: (1) defendant Continental Insurance Company's (Continental) comprehensive general liability policy (CGL policy) did not provide coverage for the underlying plaintiffs' claim (Smiths' claim); (2) Continental was not estopped to deny coverage under the CGL policy; (3) the plaintiff's institution of the declaratory judgment action to determine coverage under the CGL policy was untimely under RSA 491:22 (1983); and (4) reformation of defendant United States Fire Insurance Company's (U.S. Fire) excess policy (umbrella policy) based on mutual mistake was not warranted. We affirm.

Robert Schulte, the plaintiff's general manager, purchased and maintained the plaintiff's insurance policies. Schulte obtained coverage through two different insurance agents, the Bergeron Agency (Bergeron) and the Dunlap Agency (Dunlap). Schulte procured several policies through Bergeron, including a $1.5 million business automobile policy with Aetna Casualty and Surety Company (Aetna). The plaintiff also had a U.S. Fire umbrella policy issued by Crum and Forster Commercial Insurance Company through Dunlap. The umbrella policy for business automobile coverage attached at $1.5 million, thus requiring the insured to have $1.5 million in underlying business automobile coverage to prevent a gap in

coverage. When the umbrella policy was renewed on September 21, 1984, the schedule of underlying coverages (schedule A) listed the Aetna business automobile policy as providing $1.5 million in underlying coverage.

In the fall of 1984, Bergeron was in the process of severing its relationship with Aetna and shifting all of its coverages to American Universal Insurance, Inc. (American) and Continental. Instead of renewing the plaintiff's $1.5 million business automobile policy with Aetna on September 21, 1984, Bergeron issued a binder to the plaintiff for business automobile coverage in the amount of $1.5 million with American. When American advised Bergeron that it would not issue a business automobile policy for an amount in excess of $1 million, Bergeron issued a second binder providing $1 million in business automobile coverage to the plaintiff on October 3, 1984. Upon notification that American would not provide $1 million in business automobile coverage, Bergeron issued a third binder for $500,000 in coverage on October 4, 1984.

Bergeron put a handwritten note on the third binder, which stated: "Insd. knows 500,000 limit in effect and has increased umbrella [at] Dunlap." On October 5, 1984, the plaintiff increased the liability limit on the U.S. Fire umbrella policy from $2 million to $3 million. The limit was increased again to $5 million in June 1985. The $1.5 million attachment point of the umbrella policy was not changed.

Dunlap and U.S. Fire were unaware of the change in carriers and the decrease in the plaintiff's business automobile coverage. Schedule A was not amended to reflect the reduction in underlying coverage.

On July 22, 1985, Bobby Smith, an employee of Erosion Control Specialists, Inc. (Erosion Control) was injured when he fell from atop bales of hay in a truck Erosion Control leased from the plaintiff. In February 1989, Bobby and Tammy Smith initiated a negligence action against the plaintiff.

At the time of the accident, in addition to the $500,000 business automobile policy with American and the umbrella policy with U.S. Fire, the plaintiff had with Continental a $500,000 business automobile policy and the CGL policy which provided coverage of $1 million.

In December 1991, Continental and U.S. Fire disclosed their respective policy limits. Continental stated it would indemnify the plaintiff only up to $500,000, pursuant to the terms of the plaintiff's business automobile policy. U.S. Fire would not indemnify the plaintiff for any amount less than $1.5 million. The plaintiff contends

that it then first became aware of the gap in coverage between the underlying business automobile policies and the U.S. Fire umbrella policy. The plaintiff instituted a declaratory judgment action to establish that Continental was estopped from denying coverage under its CGL policy and, alternatively, that the plaintiff was entitled to reformation of the U.S. Fire umbrella policy based on the parties' mutual mistake as to the amount of underlying business automobile coverage available to the plaintiff.

After a two-day bench trial, the superior court ruled that Continental was not estopped to deny coverage under the CGL policy because the plaintiff did not bring the declaratory judgment action within the six-month time limitation mandated by RSA 491:22 and otherwise failed to establish the elements of estoppel. The court further ruled that the plaintiff was not entitled to reformation of the U.S. Fire umbrella policy based on mutual mistake. The court later clarified the order to state that coverage did not exist under the CGL policy for the Smiths' claim. The plaintiff appeals.

## I. Coverage Under CGL Policy

The plaintiff first argues that the superior court erred in ruling that Continental had no duty to defend and indemnify the plaintiff pursuant to the CGL policy. This court ultimately determines the proper construction and interpretation of contracts such as insurance policies. See Connolly v. Galvin, 120 N.H. 219, 221, 412 A.2d 428, 429 (1980). "We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole," Haley v. Allstate Ins. Co., 129 N.H. 512, 514, 529 A.2d 394, 396 (1987), and we "will honor the reasonable expectations of the policyholder." Town of Epping v. St. Paul Fire & Marine Ins. Co., 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). Where an express exclusion is implicated by a factual situation, "the question is whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain exclusions qualified the policy's grants of coverage." N.H. Insurance Co. v. Schofield, 119 N.H. 692, 694, 406 A.2d 715, 717 (1979) (quotation omitted).

Whether Continental's CGL policy provides coverage turns on a comparison of the Smiths' claim and the motor vehicle exclusion. See A.B.C. Builders v. American Mut. Ins. Co., 139 N.H. 745, 749, 661 A.2d 1187, 1190 (1995). The exclusion provides:

> We will not cover liability for bodily injury or property damage which results from the ownership, maintenance, use, loading or unloading of any vehicle or aircraft:

. . . which you or anyone else covered under your *Liability Coverages* owns, uses, rents or borrows

. . . .

The plaintiff relies on the Smiths' claim in a supplementary pretrial statement that the plaintiff negligently failed to properly instruct, train, and supervise its employees to bring the insured-against risk within the scope of coverage of the CGL policy.

The parties have acknowledged that there may have been two versions of the CGL policy exclusions and the plaintiff's version of the exclusions may not have exempted liability for damage resulting from entrustment of a vehicle to others. Nevertheless, the plaintiff does not claim the language of the CGL policy exclusion is ambiguous. *See Brouillard v. Prudential Prop. & Cas. Ins. Co.*, 141 N.H. 710, 712, 693 A.2d 63, 65 (1997) (stating ambiguities will be construed in favor of insured). Regardless of the applicable version, we find that the CGL policy provides no coverage for the Smiths' claim, and thus the plaintiff is not entitled to coverage under the CGL policy.

■ Claims of negligent entrustment or supervision are precluded by automobile exclusions in homeowner's or comprehensive general liability policies because coverage turns on the use of the instrumentality that causes the injury, rather than on the legal theory of liability asserted against the insured. *See, e.g., Hanover Ins. Co. v. Grondin*, 119 N.H. 394, 399-400, 402 A.2d 174, 178 (1979); *Lumberman's Mut. Cas. Co. v. Kosies*, 602 P.2d 517, 519 (Ariz. Ct. App. 1979); *Northern Insurance Co. of New York v. Ekstrom*, 784 P.2d 320, 323 (Colo. 1989); *Farmers Ins. Group v. Nelsen*, 715 P.2d 492, 494 (Or. Ct. App. 1986). Because acts such as negligent supervision and training are incidental to or intertwined with the ownership, operation, or use of the vehicles involved in an accident, they fall within the scope of automobile exclusions in liability policies. *See, e.g., Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 898 (7th Cir. 1989); *American States Ins. v. Porterfield*, 844 S.W.2d 13, 15 (Mo. Ct. App. 1992).

In the present case, the underlying action for negligent supervision and training was triggered only when Smith was injured as a result of the July 1985 accident. *See Scarfi v. Aetna Cas. & Sur. Co.*, 559 A.2d 459, 463 (N.J. Super. Ct. App. Div. 1989). Any injuries sustained in that accident resulted from the ownership, maintenance, use, or loading of the plaintiff's truck. *See id.* Further, the purpose of the exclusion is related to the purpose of comprehensive general liability insurance in general; namely, "to cover all hazards

incident to the operation of a business with the exception of certain excluded risks, including those involved in the ownership[,] maintenance, use or entrustment of an 'auto.'" *Oakley Transport, Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099, 1107 (Ill. App. Ct. 1995). Premiums that were charged the plaintiff reflect this exclusion. *See id.* We therefore hold that the exclusionary language in the CGL policy exempted the Smiths' claim from coverage and Continental was not obligated to defend and indemnify the plaintiff.

■ The plaintiff contends our holding in *New Hampshire Insurance Co. v. Schofield* demonstrates that a business automobile policy and a CGL policy need not be mutually exclusive. In *N.H. Insurance Co.*, the plaintiff insurance company had issued a premises liability policy with a restaurant operations exclusion. *N.H. Insurance Co.*, 119 N.H. at 693, 406 A.2d at 716. We held that the policy language would lead a reasonable person in the position of the insured to expect coverage for all accidents on the premises not caused by restaurant operations. *Id.* at 695, 406 A.2d at 717. Because the proximate cause of the plaintiff's injury was the defective condition of a trap door on the premises, we found the claim was not excluded from coverage by the restaurant operations exclusion. *Id.* at 695, 406 A.2d at 718. In the instant case, the CGL policy exclusion was unambiguously "drafted with the express intention of excluding from coverage injuries associated with a motor vehicle owned by the insured." *Standard Mut. Ins. Co.*, 868 F.2d at 896. Thus the plaintiff could not reasonably expect coverage for injuries caused by automobile accidents. *See N.H. Insurance Co.*, 119 N.H. at 695, 406 A.2d at 717.

*II. Estoppel*

The plaintiff next argues that even if the CGL policy provides no coverage for the Smith claim, Continental should be estopped to deny coverage based on its conduct during the approximately two and a half years from the filing of the Smiths' claim to the disclosure of the policy limits. The plaintiff asserts that during this time Continental controlled the defense of the Smiths' claim, and did not inform it or U.S. Fire that Continental was defending under only the $500,000 business automobile policy and not the $1 million CGL policy. The plaintiff alleges prejudicial reliance upon Continental's actions and inactions because despite being personally exposed to liability due to the gap in insurance coverage, the plaintiff was deprived of the opportunity to defend against and participate in any settlement of the Smiths' claim.

■■ The plaintiff bears the burden of establishing the elements of an estoppel claim. *See Healey v. Town of New Durham*, 140 N.H. 232, 240, 665 A.2d 360, 367 (1995).

A party claiming estoppel must prove four elements:

first, a representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

*Id.* at 239-40, 665 A.2d at 367. "We will uphold the trial court's denial of [an estoppel] claim unless it is unsupported by the evidence or erroneous as a matter of law." *Id.* at 240, 665 A.2d at 367 (quotation omitted).

The evidence supports the trial court's conclusion that Continental did not represent or conceal material facts that would have led the plaintiff to believe that Continental was defending under the CGL policy. The record reflects that a February 1989 letter from Bergeron to Continental references only the plaintiff's business automobile policy. Both Schulte and Continental employee David Gonsiorowski testified that Schulte provided Continental with information to establish coverage for the Smiths' claim under the business automobile policy, rather than the CGL policy. In response to the information provided by Schulte, Gonsiorowski stated that in March 1989 Continental sent a letter advising the plaintiff that it faced potential exposure in excess of its policy limits. The letter, which was the only one Continental sent to the plaintiff concerning coverage, did not reference a specific insurance policy. The Continental adjuster's file reflected only the business automobile policy limits, and the adjuster believed this was the only policy under which Continental was adjusting the loss. The adjuster testified she was not aware of the plaintiff's CGL policy with Continental until September 1991.

In addition, Schulte testified that Continental did not represent to him either that the business automobile policy had a limit in excess of $500,000 or that the CGL policy provided coverage for injuries arising out of the auto accident. Schulte did not discuss with anyone from Continental which policies would cover the claim and did not recall requesting Continental to confirm levels of coverage prior to the fall of 1991.

■ Because the evidence demonstrates that the plaintiff failed to prove the first element necessary for estoppel — a representation or concealment of material fact by Continental — *see id.* at 239-40, 665 A.2d at 367, the trial court properly ruled that Continental should not be estopped to deny coverage under the CGL policy.

■ The plaintiff also argues that because Continental assumed defense of the action without disclaiming liability under the CGL policy and without issuing a reservation of rights, it should be estopped to assert noncoverage under the CGL policy. The Continental letter sent to the plaintiff in March 1989 informed the plaintiff that the Smiths' claim was "in excess of the limits of [the plaintiff's] policy of insurance." The testimony indicates that the only Continental policy which was the subject of discussion and correspondence at that time was business automobile coverage. Continental did not represent to the plaintiff that there would be coverage under the CGL policy for the Smiths' claim. Continental defended the plaintiff pursuant to the $500,000 business automobile policy. Given the parties' understanding, Continental had no obligation to expressly disclaim liability under the CGL policy as well.

■ The plaintiff finally argues that Continental should be estopped because it did not correct U.S. Fire's mistaken belief that Continental was defending under a policy with a $1 million liability limit. The trial court correctly ruled that the plaintiff could not seek to estop Continental based on Continental's failure to correct a third party's mistaken impression. *See Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 290, 608 A.2d 840, 853 (1992).

### III. RSA 491:22

Because we find that the CGL policy does not cover the underlying claim and Continental is not estopped to deny coverage, we do not consider whether the plaintiff was barred from seeking coverage under the policy by the six-month time limitation of RSA 491:22.

### IV. Reformation

The plaintiff argues that the trial court erred by refusing to reform the U.S. Fire umbrella policy based on mutual mistake as to the amount of underlying business automobile coverage. The plaintiff contends that both it and U.S. Fire, the parties to the insurance contract, were mistaken as to the accuracy of the schedule of underlying insurance coverage.

■ "[R]eformation may be proper when an instrument fails to express the intention which the parties had in making the contract."

*Midway Excavators, Inc. v. Chandler, Comm'r*, 128 N.H. 654, 658, 522 A.2d 982, 984 (1986) (quotations omitted). Absent fraud, reformation requires a mutual mistake of fact. *Id.*

> In order for a party to prevail in a reformation action, he must demonstrate by clear and convincing evidence that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing.

*Hellas Family Restaurants, Inc. v. G & P Family Restaurants, Inc.*, 120 N.H. 818, 820, 423 A.2d 613, 614 (1980) (quotations, brackets, and emphasis omitted). "The plaintiff's burden of proof in a reformation action is a heavy one." *Id.*

In order for the umbrella policy to be reformed to reflect a $500,000 attachment point, the plaintiff had to show that U.S. Fire or its agent, Dunlap, actually agreed to reduce the attachment point to that amount. *See id.* On the date when the umbrella policy was renewed, the plaintiff actually had $1.5 million in underlying business automobile coverage. Dunlap was not aware of the later reduction in coverage and was not asked to lower the attachment point of the umbrella policy. Bergeron apparently instructed the plaintiff to "increase" his umbrella coverage with Dunlap. Schulte likewise testified that he contacted Dunlap to request an increase in the umbrella policy. Chris Gorman of Dunlap stated that Schulte contacted him or someone at his agency on October 4, 1984, regarding an increase in umbrella coverage, and the liability limit on the umbrella policy was in fact increased. The testimony indicated that within the insurance industry, this sort of instruction operates to increase the upper liability limits of an umbrella policy, rather than lower the attachment point of the policy.

The evidence before the trial court was insufficient to demonstrate mutual mistake. *Cf. id.* (upholding finding of insured's unilateral mistake where agent did not err in carrying out insured's inaccurate instructions, but simply followed them). Because the plaintiff has failed to carry its burden, the trial court did not err in declining to reform the umbrella policy.

*Affirmed.*

All concurred.