Hillsborough-northern judicial district
No. 2003-213

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

HOLYOKE MUTUAL INSURANCE COMPANY & a.

Argued: November 5, 2003
Opinion Issued: February 3, 2004

528

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Ms. Dempsey* orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert G. Whaland* on the brief and orally), for defendant Holyoke Mutual Insurance Company.

DUGGAN, J. In this declaratory judgment action, defendant Holyoke Mutual Insurance Company (Holyoke) appeals an order of the Superior Court (*Brennan*, J.) granting summary judgment in favor of the plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), with respect to stacking of underinsured motorist coverage provided by Holyoke and State Farm, as well as allocation of a tortfeasor credit. We affirm.

The following facts are undisputed. On June 5, 2000, defendant Mark Sabino, a New Hampshire resident, was injured in an automobile accident in Salem, Massachusetts. Sabino was a passenger in a vehicle owned and operated by his mother, Eleanor Sabino, a Massachusetts resident. The other vehicle involved in the accident was owned and operated by Martinez Annerys, also a Massachusetts resident. Annerys was at fault in the accident.

Annerys had an automobile insurance policy with $20,000 in liability coverage. Eleanor Sabino had a Massachusetts personal automobile policy issued by Holyoke that included underinsured benefits of $20,000 per person. Mark Sabino had a New Hampshire personal automobile policy issued by State Farm that included underinsured benefits of $100,000 per person.

Mark Sabino collected the full amount of Annerys' liability policy. Claiming that his injuries exceeded $20,000, he sought underinsured motorist benefits from his insurer, State Farm. State Farm brought a petition for declaratory judgment seeking a determination that Holyoke was obligated to provide underinsured coverage to Mark Sabino in the first instance. State Farm argued that its underinsured coverage should be

stacked upon Holyoke's to permit recovery under both policies, and that its coverage was excess to Holyoke's. Holyoke argued that no underinsured benefits were due under its policy and that both its policy and Massachusetts law prohibited stacking. The parties also disagreed on the allocation of the tortfeasor credit, *i.e.*, credit for the $20,000 paid by Annerys' insurer.

All parties filed motions for summary judgment. The superior court granted State Farm's motion, ruling that Holyoke was the primary insurer for underinsured motorist coverage. The court ruled that the Massachusetts anti-stacking statute did not apply in a situation where an out-of-state insurer provides coverage to the injured party as a named insured. *See* Mass. Gen. Laws Ann. ch. 175, § 113L(5) (1998). The court also adopted State Farm's position in favor of allocating the tortfeasor credit between the insurers. This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of the evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

The interpretation of insurance policy language is ultimately an issue of law for this court to decide. *Whitcomb v. Peerless Ins. Co.*, 141 N.H. 149, 150 (1996). "In construing insurance policy language which purports to limit liability or prevent stacking, we employ a strict construction standard which requires that ambiguities in insurance policies be construed in favor of the insured and against the insurer." *Brouillard v. Prudential Prop. & Cas. Ins. Co.*, 141 N.H. 710, 712 (1997) (quotation omitted).

The first issue presented is whether the Holyoke and State Farm underinsured motorist coverages should be stacked for purposes of determining how much underinsured coverage is available. "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." *Cardin v. Royal Ins. Co. of America*, 476 N.E.2d 200, 204 n.7 (Mass. 1985). Under both New Hampshire and Massachusetts law, underinsured benefits are due only when a responsible party's liability policy limits are less than the policy limits for underinsured coverage. *See Murphy v. Safety Ins. Co.*, 709 N.E.2d 410, 412 (Mass. 1999); *Descoteaux v. Liberty Mut. Ins. Co.*, 125 N.H. 38, 44 (1984).

If the Massachusetts and New Hampshire coverages may be stacked, the total underinsured limits exceed the tortfeasor's liability limits and the Holyoke coverage may apply. If, however, the policies may not be stacked, the Holyoke coverage will not be available because the limits of its underinsured coverage are equal to the limits of the tortfeasor's liability coverage. For purposes of this appeal, the parties agree that New Hampshire law governs the State Farm policy and that Massachusetts law governs the Holyoke policy.

We have previously addressed the stacking of uninsured/underinsured motorist benefits under New Hampshire law: "[T]he stacking of uninsured motorist benefits is well established in New Hampshire. Where the tortfeasor is uninsured, an insured is permitted to stack the coverages of as many uninsured motorist policies as are applicable to him." *Descoteaux*, 125 N.H. at 45 (quotation omitted). Although stacking is generally allowed, we have also stated that an insurance company remains free to limit its liability through clear and unambiguous policy language. *State Farm Mut. Auto. Ins. Co. v. Desfosses*, 130 N.H. 260, 264 (1987).

Massachusetts embraces a different approach under legislation that prohibits stacking of underinsured coverage. *See* Mass. Gen. Laws Ann. ch. 175, § 113L(5). Because policy costs were increasing due to stacking of policies by Massachusetts insureds involved in automobile accidents, stacking was eliminated in order to lower premiums and allow consumers to purchase larger amounts of coverage. *See Commerce Ins. Co. v. Doherty*, No. 97-1557C, 2000 Mass. Super. LEXIS 502, at *7-8 (Mass. Super. June 22, 2000); *see also Alguila v. Safety Ins. Co.*, 624 N.E.2d 79, 81 (Mass. 1993).

Holyoke argues that, based upon Massachusetts law and the terms of its policy, we should not reach the issue of stacking. The Holyoke policy provides:

> We will only pay if the injured person is legally entitled to recover from the owners or the operators of all underinsured autos. Such insured person has a claim under this part when the limits for automobile bodily injury liability insurance covering the owners and operators of the legally-responsible autos are:
> 1. Less than the limits shown for this part of your coverage selections page; and
> 2. Not sufficient to pay for the damages sustained by the injured person.

Under both the policy terms and Massachusetts law, the underinsured policy limits must exceed applicable liability policy limits in order for there to be coverage. *See Murphy*, 709 N.E.2d at 412. Because the underinsured limits of the policy and the liability limits of the tortfeasor policy are the same, Holyoke argues that its coverage is unavailable.

Alternatively, Holyoke maintains that if we do reach the stacking issue, its underinsured coverage is unavailable based on the anti-stacking language contained in its policy:

> The limits of two or more autos or policies shall not be added together, combined or stacked, to determine the limits of coverage available to anyone covered under this Part, regardless of the number of autos involved, persons covered, claims made, or premiums shown on the Coverage Selections Page.

It is undisputed that this language is taken from the Massachusetts statute. Mass. Gen. Laws Ann. ch. 175, § 113L(5).

State Farm argues that stacking of the underinsured policies at issue is permissible under Massachusetts law, and should occur before the limits of underinsured coverage are determined. In support of this argument, State Farm cites two unreported Massachusetts superior court orders holding that the Massachusetts statutory scheme regarding underinsured coverage was not intended to prohibit the stacking of a Massachusetts policy and a policy from another jurisdiction. *Doherty*, 2000 Mass. Super. LEXIS 502; *Hague v. The Hanover Ins. Co.*, No. 95-6255, 1997 Mass. Super. LEXIS 487 (Mass. Super. January 22, 1997). State Farm also notes that the Massachusetts Insurance Commissioner has interpreted the anti-stacking provisions of section 113L to apply only to Massachusetts policies. *See Hague*, 1997 Mass. Super. LEXIS 487 at *21. We agree with State Farm.

In *Doherty*, a Massachusetts resident, Doherty, was seriously injured while a passenger in a vehicle driven by Lancaster. *Doherty*, 2000 Mass. Super. LEXIS 502 at *2-3. Doherty and Lancaster were hit from behind. *Id.* at *3. The tortfeasor's Massachusetts insurer paid the full limit of its $20,000 liability policy to Doherty. *Id.* Doherty obtained primary underinsured benefits from Lancaster's Virginia carrier, United Services Automobile Association (USAA). *Id.*

Because he still had additional damages, Doherty then sought excess underinsured coverage from Commerce, his Massachusetts carrier. *See id.* at *4. Commerce denied coverage based in part upon the Massachusetts anti-stacking statute, and initiated a declaratory judgment action to determine whether the stacking of a Massachusetts auto insurance policy

and a Virginia auto insurance policy was prohibited under Massachusetts law. *See id.* at *5-7. Interpreting the Commerce policy according to Massachusetts law, the court found that the prohibition against stacking applied only to policies issued and delivered in Massachusetts. *Id.* at *7. Applying Virginia law to the USAA policy, the court found that the stacking or pooling of policies was permitted. *Id.* at *10-12.

Similarly, *Hague* involved a coverage dispute arising out of the interaction of Massachusetts and Virginia policies. Hague, a Virginia resident, was killed in an automobile accident that occurred in Massachusetts. *See Hague,* 1997 Mass. Super. LEXIS 487, at *3-4. He was a passenger in a vehicle operated by Laura Kane and owned by her mother, Nancy Kane, both of Massachusetts. *Id.* at *3. The Kane vehicle was struck by Matanza, who caused the accident. *Id.*

Matanza had a Massachusetts liability policy with limits of $20,000. *Id.* at *4. Nancy Kane had Massachusetts underinsured coverage provided by The Hanover Insurance Company (Hanover) with limits of $250,000. *Id.* Hague had two Virginia underinsured policies in his own name, and had additional Virginia coverage as a member of his father's household. *Id.* at *5. Hague's estate collected Matanza's liability policy and then looked to the Hanover policy as the primary underinsured coverage. *Id.* at *4-5.

Hanover denied coverage, arguing that Mass. Gen. Laws Ann. ch. 175, § 113L(5) mandated that if the injured party was a named insured under any policy providing underinsured motorist coverage—whether a Massachusetts policy or a policy issued in any other State—then the party could only receive underinsured benefits from that policy. *See id.* at *11. The court ruled against Hanover, finding that Hague was entitled to coverage under the Massachusetts policy. The court stated that Hanover's interpretation did not fit "with the thrust of the statute as a whole, which is clearly focused on Massachusetts coverage alone." *Id.* at *15-16. The court further noted that the Massachusetts Insurance Commissioner had interpreted the anti-stacking and ordering of claims in section 113L(5) to apply only to Massachusetts policies, and ultimately concluded that stacking of the additional Virginia coverages upon the Massachusetts underinsured coverage would be permitted. *See id.* at *21.

█ While not binding, the trial courts' reasoning in the *Doherty* and *Hague* cases is the best indication provided to us of how the Massachusetts Supreme Judicial Court would interpret the Massachusetts statutory scheme. The Massachusetts Insurance Commissioner's interpretation of the statute also provides useful guidance. Under the circumstances here presented, we conclude that Massachusetts law does not prohibit stacking

of the underinsured coverage of a policy issued in a State other than Massachusetts.

Holyoke's argument that its policy language provides an independent basis for prohibiting stacking is unavailing. The anti-stacking language of the policy is virtually identical to the Massachusetts statute. Since we find that the statute does not apply to a New Hampshire policy, the language in question does not present an independent ground for considering the coverage question. *Cf. Matarese v. N.H. Mun. Assoc. Prop.—Liab. Ins. Trust*, 147 N.H. 396, 401-02 (2002).

■ Accordingly, we hold that State Farm's coverage may be stacked upon Holyoke's for purposes of determining the available limits of underinsured motorist coverage. With stacking, the limits of underinsured coverage are greater than the tortfeasor's $20,000 liability limits, and Holyoke's coverage applies.

■ The second issue raised in this appeal is whether State Farm's coverage is excess to Holyoke's. The State Farm policy contains the following language with respect to excess coverage:

> If there is other applicable insurance available under one or more policies or provisions of coverage:
>
> . . .
>
> 2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

The parties agree that Holyoke's policy does not contain any excess coverage language. Based on the plain language of State Farm's policy, and the lack of any countervailing language in Holyoke's, we hold that State Farm's underinsured coverage is excess to Holyoke's. *Calabraro v. Metropolitan Prop. & Cas. Ins. Co.*, 142 N.H. 308 (1997).

The final issue presented is whether there should be an allocation of the tortfeasor credit between Holyoke and State Farm. Holyoke argues that, if stacking is permitted, it should receive the full benefit of the tortfeasor credit as USAA did in *Doherty*. USAA was the primary underinsured carrier in that case, as Holyoke is here. In *Doherty*, however, the court appears to have followed Virginia law in allowing USAA to keep the tortfeasor credit consistent with the terms of its Virginia policy. Massachusetts law is silent on the issue.

■ State Farm argues that, in the absence of any controlling Massachusetts law, New Hampshire law should be applied. Under New

534

Hampshire law, there would be an apportioning of the credit based on the amount each insurer contributes to a settlement or judgment. *Ellis v. Royal Ins. Co.*, 129 N.H. 326, 338-39 (1987). Given the lack of Massachusetts authority, and given our finding with respect to stacking, we are persuaded by State Farm's argument regarding apportionment.

*Affirmed.*

BRODERICK, C.J., and NADEAU and DALIANIS, JJ., concurred.